BRITT, LOEFFLER & WEIL v. UNITED STATES (No. 1670).[1]

1. CONSTRUCTION—MEDICINAL PREPARATION, WHAT IS.
    The fact that preparations designed to cure or alleviate, or to palliate or prevent, a disease of the human body, also afford nourishment to the patient does not necessarily exclude them from the classification of medicinal compounds or articles similar thereto (par. 17, tariff act of 1913).

2. CONSTRUCTION—CHANGE OF LANGUAGE SIGNIFIES CHANGE OF MEANING.
    The addition, in the tariff acts of 1909 and 1913 to the provision for medicinal preparations already existing in former acts, of a provision for similar substances shows that Congress intended to include within paragraph 17, tariff act of 1913, certain other articles which are not strictly and exclusively medicinal, but which nevertheless possess some therapeutic value.

3. "MALT SOUP STOCK" AND "FOOD MALTOSE," HOW DUTIABLE.
    Packages of less than 2½ pounds of Loeflund's malt soup stock, a preparation of 57 per cent maltose and 12 per cent dextrin with a certain percentage of potassium carbonate, designed to be given, in combination with milk, wheat flour, and water, to marantic infants for their nourishment and to counteract their intestinal acid intoxication, are dutiable under paragraph 17, tariff act of 1913, as being similar to medicinal compounds, and not under paragraph 385 as a nonenumerated manufacture. Loeflund's food maltose, a preparation 60 per cent dextrin and 40 per cent maltose, designed to be given to patients in enfeebled states the result of malnutrition, is subject to the same classification.

United States Court of Customs Appeals, May 12, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7832 (T. D. 36030).

[Affirmed.]

*Allan R. Brown* for appellants.

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

[1] Reported in T. D. 36428 (30 Treas. Dec., 878).

[Oral argument Apr. 12, 1916, by Mr. Brown and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of Loeflund's food maltose in tins and Loeflund's malt soup stock in bottles, the individual packages containing less than $2\frac{1}{2}$ pounds each. The importations were made under the tariff act of 1913.

The collector classified the articles as articles similar to medicinal compounds under the provisions of paragraph 17 for "medicinal compounds, combinations, and all similar articles dutiable under this section, except soap, whether specially provided for or not, put up in individual packages of two and one-half pounds or less gross weight," and held that they were subject to a minimum duty of 20 per cent ad valorem as prescribed by that paragraph. Duty was assessed accordingly.

The importers protested against the assessment, claiming that the articles were dutiable at the rate of 15 per cent ad valorem under paragraph 385 as nonenumerated manufactured articles.

The protest was submitted upon testimony to. the Board of General Appraisers and was overruled. The importers now appeal.

The following paragraphs of the act of 1913 are here copied for convenient reference.

5. Alkalies, alkaloids, and all chemical and medicinal compounds, preparations, mixtures and salts, and combinations thereof not specially provided for in this section, 15 per centum ad valorem.

17. Chemical and medicinal compounds, combinations and all similar articles dutiable under this section, except soap, whether specially provided for or not, put up in individual packages of two and one-half pounds or less gross weight (except samples without commercial value) shall be dutiable at a rate not less than 20 per centum ad valorem: *Provided*, That chemicals, drugs, medicinal and similar substances, whether dutiable or free, imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms, shall be dutiable at not less than 25 per centum ad valorem.

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

It may be noted that the foregoing paragraphs do not relate to medicinal preparations which contain alcohol. Preparations containing alcohol are provided for by a different paragraph, which is not here copied, since the present merchandise concededly contains none.

It will be observed that paragraph 5, *supra*, imposes a duty of 15 per cent ad valorem upon all medicinal compounds, preparations, and combinations thereof, not specially provided for in the act, without express reference to the style or size of their individual packages, whereas paragraph 17, *supra*, provides that a minimum duty of 20 per cent ad valorem shall be imposed upon medicinal compounds and

combinations, and also upon "all similar articles," if dutiable under the act, whether specially provided for or not, when put up in individual packages of 2½ pounds or less, gross weight. This minimum rate of duty is advanced by the paragraph to 25 per cent ad valorem upon "medicinal and similar substances" if imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms whether the merchandise thus packed be dutiable or free under the act when imported in other packages.

The present issue is whether the articles now in question are within the classification of articles "similar" to medicinal compounds or combinations. If they are such they would concededly be liable to the minimum rate of 20 per cent ad valorem, as prescribed by paragraph 17 and as assessed by the collector.

The "malt soup stock" in question is a proprietary article produced in the dietetic-product laboratory of Ed. Loeflund & Co., Stuttgart, according to the formula of Prof. Dr. Keller, of Berlin. It is said that the formula is to be found in the book of Dr. Kopluk, who is "one of the most noted children's specialists in the United States, and that the book is a standard work in all medical colleges." The article is an unfermented malt product containing 57 per cent of maltose, to which are added 12 per cent of dextrin and a certain percentage of potassium carbonate. According to the directions on the bottle 3½ ounces of the stock are to be dissolved in a pint of warm water, and this is to be mixed with a pint of milk containing 3 ounces of wheat flour properly strained. The mixture, is to be boiled, and in the case of young and weak children may be further diluted with water. The stock is said to be "indicated" for use in cases of infantile marasmus. In such cases it is said that "the acid intoxication which exists in the gut of these marantic infants is neutralized by this food. The increased ammonia in the urine of these infants is an index of this form of gut poisoning. This ammonia diminishes or disappears from the urine on the administration of these dextrinized gruels." It is recommended that after children increase in weight by taking this food for two or three months they be gradually weaned from it and accustomed to simple milk modifications and other articles of diet. The potassium carbonate which is contained in the stock has the effect of converting milk from an acid to an alkaline reaction.

The second article above named is in the form of a powder. It is labeled "Loeflund's food maltose, malt sugar consisting of dextrine maltose," and is prepared in the same laboratories which produce the former article. The label recommends the article for infants who are in need of easily digestible nourishment, and states that it increases weight and for this reason may be found useful for invalids or convalescents, and that it is "indicated" in enfeebled states the

result of malnutrition.   In special cases physicians may direct vary-ing proportions of the food maltose, milk, and water.   It consists chemically of dextrin and maltose, 60 : 40 parts, and contains no potassium carbonate.

There is a slight conflict between the statements of the importers concerning the characteristics of the articles in question and those made by the manufacturer upon the labels and wrapper of the arti-cles.   The facts above stated, however, are those which seem to be established upon the entire testimony when considered together.

It therefore appears that the articles in question are designed as remedies in cases of sickness, and are to be used under the direction of physicians.   They are not commonly known as food articles, nor are they to be consumed separately or directly like ordinary articles of food or drink, nor are maltose and dextrin when taken alone known as articles of food.   The present compounds are designed to be mixed in small quantities with certain kinds of food, which are prepared for persons, especially infants, who are suffering from certain forms of disease, and in such cases they tend to eliminate certain poisons from the system, thus aiding the digestive processes and at the same time furnishing nourishment to the patient.

Upon the foregoing facts we are inclined to the view that these articles, while not themselves strictly medicinal compounds or com-binations, are nevertheless articles which are "similar" thereto. They are similar to medicinal compounds in the following particulars, namely: They are intended for administration to sick persons or con-valescents only; they are not suitable nor intended for consumption by people in health; they are designed to be used under the direc-tion of physicians; and their effect upon a patient when adminis-tered is in part medicinal.   The circumstance that they are prepared in a laboratory and are for sale by druggists is notably consistent with this view.

The word "medicinal" as defined by the dictionaries possesses the meaning of "curative," or "adapted to heal or mitigate bodily dis-eases."   In the case of Dodge *v.* United States (130 Fed., 624, 625), Judge Lacombe in dealing with the term said:

As to the precise meaning of the word "medicinal," for the purposes of this particular case I will assume—without undertaking to say what may or what may not be the conclusion which the court will arrive at when it becomes necessary, if it does here-after, to determine the precise meaning of that, I will assume—that it confines the noun with which it is coupled to something which is of use, or believed by the pre-scriber or user fairly and honestly to be of use, in curing or alleviating, or palliating or preventing, some disease or affection of the human frame.

This tentative definition of the word "medicinal" seems to be broad enough to include the present articles.   At least it may be said that these articles are "similar" to those described by the word,.

according to the foregoing definition of it. For these articles are designed to cure or alleviate, or to palliate or prevent a disease of the human frame. The fact that the articles also afford nourishment to the patient does not necessarily exclude them from the classification of medicinal preparations or articles similar thereto, since various well-known remedies are chiefly valuable for their nutrient qualities. National Dispensatory (1909), Cod-Liver Oil, 1136.

The appellants call especial attention to the decision of the Board of General Appraisers in reference to Du Barry's Revalento Arabica, a lental meal recommended as a nutritious food for invalids, which was held by the board not to be a medicinal preparation under the tariff act of 1894. G. A. 3415 (T. D. 16987). The finding of the board in that case, however, was to the effect that the article then in question was simply a farinaceous food, and the board held that "articles of food, pure and simple, are not medicines." It may be noted also that there was no provision in the tariff act of 1894 for "similar articles" as an allied classification with medicinal preparations or compounds. The foregoing case therefore differs from the present one in respect both to the merchandise and the issue.

It may be noted as a fact having perhaps a very slight bearing upon the present question that the attention of the Ways and Means Committee was called to articles like these by a written brief filed at the hearings preliminary to the present tariff act, wherein a strong appeal was made in favor of placing such articles upon the free list, upon the express ground that they were medicinal preparations possessing great value in the treatment of marasmus and atrophy cases in infants. Hearings before Ways and Means Committee (62d Cong., Doc. 1447, p. 376). It is conceded, however, that such articles were not placed by Congress upon the free list in answer to this appeal. It is contended by appellants that they became dutiable under the act as nonenumerated manufactured articles. If, however, they respond to the descriptions of paragraph 17, *supra*, they would thereby be enumerated, even though the paragraph is one for a minimum duty only.

A comparison of the successive tariff provisions in relation to non-alcoholic medicinal preparations may cast some light upon the present question. These provisions are therefore here copied, commencing with the tariff act of 1883.

ACT OF 1883.

Preparations: All medicinal preparations known as cerates, conserves, decoctions, emulsions, extracts, solid or fluid; infusions, juices, liniments, lozenges, mixtures, mucilages, ointments, oleo-resins, pills, plasters, powders, resins, suppositories, sirups, vinegars, and waters, of any of which alcohol is not a component part, and which are not specially enumerated or provided for in this act, 25 per centum ad valorem.

\*          \*          \*          \*          \*          \*          \*

Proprietary preparations, to wit: All cosmetics, pills, powders, troches or lozenges, sirups, cordials, bitters, anodynes, tonics, plasters, liniments, salves, ointments, pastes, drops, waters, essences, spirits, oils, or preparations or compositions recommended to the public as proprietary articles, or prepared according to some private formula, as remedies or specifics for any disease or diseases, or affections whatever, affecting the human or animal body, including all toilet preparations whatever, used as applications to the hair, mouth, teeth, or skin, not specially enumerated or provided for in this act, 50 per centum ad valorem.

#### ACT OF 1890.

75. All medicinal preparations, including medicinal proprietary preparations, of which alcohol is not a component part, and not specially provided for in this act, 25 per centum ad valorem; calomel and other mercurial medicinal preparations, 35 per centum ad valorem.

#### ACT OF 1894.

58. All medicinal preparations, including medicinal coal-tar preparations and medicinal proprietary preparations, of which alcohol is a component part, or in the preparation of which alcohol is used, not specially provided for in this act, 50 cents per pound: *Provided,* That no such preparation shall pay less than 25 per centum ad valorem.

59. All medicinal preparations not specially provided for in this act, 25 per centum ad valorem.

#### ACT OF 1897.

68. Medicinal preparations not containing alcohol or in the preparation of which alcohol is not used, not specially provided for in this act, 25 per centum ad valorem; calomel and other mercurial medicinal preparations, 35 per centum ad valorem.

#### ACT OF 1909.

65. Medicinal preparations containing alcohol or in the preparation of which alcohol is used, not specially provided for in this section, 55 cents per pound, but in no case shall the same pay less than 25 per centum ad valorem; calomel, corrosive sublimate, and other mercurial medicinal preparations, 35 per centum ad valorem; all other medicinal preparations not specially provided for in this section, 25 per centum ad valorem: *Provided,* That chemicals, drugs, medicinal and similar substances, whether dutiable or free, imported in capsules, pills, tablets, lozenges, troches, or similar forms, and intended for medicinal purposes, shall be dutiable at not less than the rate imposed by this section on medicinal preparations.

#### ACT OF 1913.

17. Chemical and medicinal compounds, combinations, and all similar articles dutiable under this section, except soap, whether specially provided for or not, put up in individual packages of 2½ pounds or less gross weight (except samples without commercial value) shall be dutiable at a rate not less than 20 per centum ad valorem: *Provided,* That chemicals, drugs, medicinal and similar substances, whether dutiable or free, imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms, shall be dutiable at not less than 25 per centum ad valorem.

It will be observed that the tariff act of 1883 seems to have used the terms "medicinal preparations" and "proprietary preparations" with a very broad and comprehensive meaning. The act of 1890 imposed duty upon "all medicinal preparations, including proprietary preparations, * * * not specially provided for." The act of

1894 adopted the enumeration of "all medicinal preparations, * * * not specially provided for." The act of 1897 repeated the enumeration of "medicinal preparations * * * not specially provided for."

The tariff act of 1909, however, enumerated "all other medicinal preparations not specially provided for," and furthermore provided that "medicinal and similar substances," whether dutiable or free, when intended for medicinal purposes, and imported in certain forms in which medicines are commonly put up, should be dutiable at a rate not less than that imposed on medicinal preparations. This was the first tariff revision in which the classification of "similar substances" or "similar articles" was conjoined with that of medicinal preparations or compounds.

The foregoing provision of the act of 1909 was reenacted with enlarged application in the tariff act of 1913. This provision manifestly does not comprehend any article which is simply a form of food, nevertheless it indicates a legislative purpose to bring within the given rate of duty not only compounds and combinations which are strictly and exclusively medicinal in character, but also certain other articles which are not strictly and exclusively medicinal, but which nevertheless possess some therapeutic value, and because of this quality and of the form in which they appear in the trade are known and sold to the public as remedial agencies. Articles having the form, characteristics, and use of the present merchandise seem to fall within this description.

The decision of the board is therefore *affirmed*.