MONTICELLI BROS. ET AL *v.* UNITED STATES (No. 1741).[1]

1. CONSTRUCTION, PARAGRAPH 17, TARIFF ACT OF 1913—"COMPOUNDS, COMBINATIONS."

   A compound or combination, in the general understanding, is necessarily something composed of more than one component material, and these expressions in paragraph 17, tariff act of 1913, are not applicable to a natural product.

2. CONSTRUCTION, PARAGRAPH 17, TARIFF ACT OF 1913—"MEDICINAL."

   The use of the word "medicinal" in paragraph 17, tariff act of 1913, with reference to compounds or combinations, requires that the compound or combination should have healing or curative properties, and probably that it should be commonly so regarded and used.

3. CONSTRUCTION, PARAGRAPH 17, TARIFF ACT OF 1913—"SIMILAR."

   The expression "all similar articles," used in paragraph 17, tariff act of 1913, with reference to compounds or combinations, applies only to a compound, combination, mixture, or preparation composed of more than one substance or material.

4. CONSTRUCTION, PARAGRAPH 17, TARIFF ACT OF 1913—"MEDICINAL COMPOUNDS, COMBINATIONS, AND ALL SIMILAR ARTICLES."

   The expression "medicinal compounds, combinations, and all similar articles" means, first, strictly medical compounds and combinations, and, second, compounds or combinations similar thereto in that, while not strictly medical because possessing properties which adapt them to other uses, are nevertheless susceptible of medicinal uses and, in the form and condition imported, are specially designed therefor and so chiefly used.—Britt, Loeffler & Weil *v.* United States (7 Ct. Cust. Appls., 118; T. D. 36428).

---

[1] T. D. 37162 (32 Treas. Dec., 442).

5. SWEET ALMOND OIL—CASTOR OIL.

Sweet almond oil and castor oil, in small bottles each containing not more than 3 to 4 ounces, are dutiable eo nomine under paragraph 45, tariff act of 1913, and not as "chemical and medicinal compounds, combinations, and all similar articles" under paragraph 17.

## United States Court of Customs Appeals, April 11, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7918 (T. D. 36485).

[Reversed.]

Comstock & Washburn (Albert H. Washburn and J. Stuart Tompkins of counsel) for appellants.

Bert Hanson, Assistant Attorney General (Frank P. Wilson, special attorney, of counsel), for the United States.

[Oral argument, Dec. 7, 1916, by Mr. Washburn and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Paragraphs 17 and 45 of the act of 1913, respectively, read as follows:

17. Chemical and medicinal compounds, combinations and all similar articles dutiable under this section, except soap, whether specially provided for or not, put up in individual packages of two and one-half pounds or less gross weight (except samples without commercial value) shall be dutiable at a rate not less than 20 per centum ad valorem: Provided, That chemicals, drugs, medicinal and similar substances, whether dutiable or free, imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms, shall be dutiable at not less than 25 per centum ad valorem.

45. Oils, expressed: Alizarin assistant, sulphoricinoleic acid, and ricinoleic acid, and soaps containing castor oil, any of the foregoing in whatever form, and all other alizarin assistants and all soluble greases used in the processes of softening, dyeing, or finishing, not specially provided for in this section, 25 per centum ad valorem; castor oil, 12 cents per gallon; flaxseed and linseed oil, raw, boiled, or oxidized, 10 cents per gallon of 7½ pounds; poppy-seed oil, raw, boiled, or oxidized, rapeseed oil, and peanut oil, 6 cents per gallon; hempseed oil, 3 cents per gallon; almond oil, sweet, 5 cents per pound; sesame or sesamum seed or bean oil, 1 cent per pound; olive oil, not specially provided for in this section, 20 cents per gallon; olive oil, in bottles, jars, kegs, tins, or other packages having a capacity of less than five standard gallons each, 30 cents per gallon; all other expressed oils and all combinations of the same, not specially provided for in this section, 15 per centum ad valorem.

The question here is whether sweet almond oil and castor oil, eo nomine referred to in paragraph 45, respectively, and separately imported in small bottles, each containing not more than 3 to 4 ounces, shall pay the specific duty therefor prescribed in said paragraph or shall pay what is assumed to be the higher rate of 20 per cent ad valorem under paragraph 17.

There are several importations in this case, each of which, as appears by the collector's report, was advisorily returned by the appraiser as a medical preparation and was assessed at the rate of 20 per cent ad valorem under paragraph 17. A majority of the Board of General Appraisers, one member thereof dissenting, over-

ruled the protests which claimed assessment should be under the specific rates prescribed for the merchandise in paragraph 45.

At the hearing before the board the protestants called witnesses who produced four bottles containing oil, and identified the same as samples of the importations. These were marked as exhibits and received in evidence. The testimony of the importers' witnesses established without dispute that these oils are expressed. The fact is not controverted.

The Government called a witness, a customs examiner, who was also a practicing physician. Among other things he testified in substance that sweet almond oil was used as a nutrient and demulcent (soothing to irritated surfaces); that it was supposed to possess therapeutic properties and was administered for that purpose, but what such properties were, other than nutrient, he could not say; that he had prescribed it, but he did not say for what purpose. There was no testimony tending to show the extent of its use in any of the above respects or its major use. There was no testimony as to the properties or use of castor oil.

The Century Dictionary; the United States Dispensatory; the Encyclopedia Britannica; Rogers' Manual of Industrial Chemistry; A Manual of Dyeing, by Knecht and others; Chemical Technology and Analysis of Oils, Fats, and Waxes, by Lewkowitsch; and the Oxford Dictionary are referred to, some by both counsel and others by only one, as authorities setting forth the origin, properties, and uses of these oils. Therefrom we learn that almond oil is a fixed oil expressed from both sweet almonds and bitter almonds; that it may be used for the same purposes as olive oil; that it is a nutritious and pleasant food, is used internally in medicine, in the manufacture of high-class toilet soap, and in pharmaceutical practice. The expression "sweet almond oil," or "fixed almond oil," which apparently means the same thing, seems to be used to distinguish the oil to which the name is applied from another oil obtained from the bitter almond, referred to as bitter almond oil. This we assume to be the article thus denominated in paragraph 46 of the tariff act, the only source of which appears to be the bitter almond. Some of these authorities state, and counsel agree, that castor oil is medicinally used as a mild but efficient purgative, but that its principal use is in various manufacturing operations and for lubricating purposes.

Three of the exhibits before us are labeled in a foreign tongue with words which indicate, as we understand, that the bottles so labeled contain pure oil of sweet almonds. The other exhibit is labeled as containing castor oil and upon the paper wrapper containing the bottle it is stated that the oil is prepared by a special process rendering it inodorous and tasteless and therefore susceptible of being administered to children and sensitive persons. Each bottle has a metallic cap over the cork securely fastening it.

It is apparent that the first question here is whether these oils are "similar articles" to the chemical or medicinal compounds or combinations named in paragraph 17. This involves the primary inquiry as to what may be articles similar to compounds or combinations. The citation of authorities is unnecessary to satisfy the mind that a compound or combination in the general understanding is necessarily something composed of more than one component material. The words themselves imply that requirement, because a compound or combination is a thing which results from the act of compounding or combining, and that obviously is the putting together or mixing in some manner of the materials requisite therefor.

We doubt if, in common understanding, it is applicable to a natural product. See United States v. Davies, Turner & Co. et al. (5 Ct. Cust. Appls., 196; T. D. 34325).

It has been held that a chemical compound is produced by a chemical union of constituent elements, or, as in the case of compounded drugs, is the result of a mixing together of component materials producing not a chemical union but a physical mixture in which each substance retains its own separate properties. United States v. Stubbs (91 Fed., 609); Strohmeyer & Arpe Co. v. United States (2 Ct. Cust. Appls., 285; T. D. 32035).

Assuming we have arrived at a correct understanding as to the ordinary meaning of the words "compounds" and "combinations," the next step is to ascertain the effect of modifying them by the adjective "medicinal," for with "chemical" we are not here concerned. As to "medicinal," its force obviously is to require that the compound or combination must *possess* healing or curative properties, and probably that it should be commonly so regarded and used.

To be similar to a medicinal compound or combination we think it is indispensable that an article must be a compound, combination, mixture, or preparation composed of more than one substance or material. These oils are not such. Each is a natural substance, namely, an oil expressed from a natural product. Nothing whatever has been compounded, combined, or mixed therewith, and for this reason alone we think it might well be held that neither is an article similar to a medicinal compound or combination within the paragraph.

We are further impressed with the view that by "medicinal compounds, combinations, and all similar articles" Congress had in mind, first, strictly medical compounds and combinations used as medicines, and, second, that articles to be similar thereto must be those which, while not strictly medical compounds or combinations because possessing properties which adapt them to other uses, are nevertheless susceptible of medicinal uses and in the form and condition imported are specially designed therefor and so chiefly used.

In the case at bar there is no proof that these oils in the form and condition in which imported are chiefly used for their therapeutic

properties. Neither is there satisfactory proof that they are specially designed for such use.

In Britt, Loeffler & Weil *v.* United States (7 Ct. Cust. Appls., 118; T. D. 36428) malt food compounded or composed of several substances, intended for administration to sick persons or to convalescents only under the direction of physicians and apparently designed and appropriate for no other use, was the merchandise under consideration. It was held to be a similar article within paragraph 17. It was also said that the provisions of paragraph 65 of the act of 1909, the ancestor of paragraph 17 here, should in such reenacted form be given "enlarged application." The Government here relies upon this quoted expression. The opinion, however, gave "enlarged application" thereto by allowing the term "similar articles" to include the malt food under consideration, which was found not to be, strictly speaking, a medicinal compound or combination. That case is not authority for holding that an article of one component material only is similar to a medicinal compound or combination.

It is, however, argued, and such argument evidently found favor with the majority of the board, that unless the term "similar articles" is held to include those of one component material only there will be no field for the operation of that term. There is no proof whatever which justifies this assumption, and we are unwilling to say in the absence thereof that such is the fact. In Schedule A a multitude of things are provided for, some at least, and probably many, of which are composed of one substance (the same is true of other schedules) and possess therapeutic properties, although not commonly used as medicines or so regarded. If the quoted expression, "similar articles," be held applicable to such things when composed of one material only, paragraph 17 will invade and increase duties upon a great variety of articles because of the fact that they *possess* medicinal properties and are devoted occasionally to medicinal uses, while their major use is otherwise. Nothing presented in this case satisfies us that Congress so intended.

Paragraph 17 has received careful departmental consideration.

In T. D. 34035, dated January, 1914, the Treasury Department, construing it with reference to the classification of oil of sweet almond, oil of lemon, oil of orange, and other articles eo nomine provided for, expressed the opinion that "all the articles provided for in Schedule A, whether eo nomine or otherwise, except soap and sponges, are dutiable at not less than 20 per cent ad valorem when imported in packages of not less than $2\frac{1}{2}$ pounds, gross weight."

It is unnecessary, perhaps, to state that both the paragraphs under consideration here are in Schedule A.

In a later ruling (T. D. 34184, dated February, 1914) the department stated "since the publication of T. D. 34035 it has been repre-

sented to the department that a number of articles provided for in Schedule A of the tariff act are not in fact chemical or medicinal compounds or combinations, among them olive oil, enamel paints, ceramic and glass colors, etc." It also stated that a question of fact would arise in each case as to whether the article was a chemical or medicinal compound or combination or an article similar in material, quality, or the use to which it may be applied to such chemical or medicinal compounds; and, further, that in its opinion, "olive oil, oil of lemon, oil of orange, peanut oil, fish oil, and other rendered, expressed, distilled, and essential oils which are not mixed or compounded with other oils, earths, chalk, crude drugs which are natural and uncompounded, and similar articles are not similar to chemical and medicinal preparations or combinations, and do not, therefore, fall within the provisions of said paragraph."

We think the later decision of the department is sound in principle and that, consistent therewith, the duty on the oils here is not controlled by paragraph 17.

Olive oil, it is well known, possesses nutrient, demulcent, and cathartic properties and is used in therapeutics. It has also a wide variety of other uses, not the least important being for food purposes for human consumption. Paragraph 45 makes express provision for olive oil in different containers, such as bottles, jars, tins, kegs, and other packages not exceeding 5 gallons. We take cognizance of the fact that some of the containers of olive oil in the retail trade at least are within the capacity provided for in paragraph 17. Did Congress intend to assess a duty upon olive oil other than or different from that provided in paragraph 45 because it happens to be imported in packages of the size mentioned in paragraph 17, when in the same packages it is also within the express provision of paragraph 45? Apparently there is no reason why a package of olive oil weighing 2½ pounds (about a quart) should not pay the same rate of duty as when imported in a bottle containing 3 or 4 pounds, and that is the clear import of paragraph 45.

Mineral waters, both natural and artificial, in bottles of not more than one-half pint are specifically provided for in paragraph 249 at 10 cents per dozen bottles, and at equally specific rates when in containers of larger sizes. Various natural mineral waters are, we understand, imported in bottles of the size first above mentioned and used for their cathartic or aperient properties. Did Congress intend such to be dutiable under the provisions of paragraph 17?

These questions, of course, are not before us, but we can not shut our eyes to the possible and probable results of adopting the interpretation claimed by the Government if the same is to be consistently hereafter followed.

In conformity to the views hereinbefore expressed, we think the judgment of the Board of General Appraisers ought to be, and it hereby is, *reversed.*