UNITED STATES v. SHELL OIL CO., INC. AND A. W. SALTER & CO., INC. (No. 4885)[1]

---

[1] C. A. D. 637.

United States Court of Customs and Patent Appeals, February 8, 1957

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

*Sharretts, Paley & Carter* (*Richard F. Weeks* and *Howard C. Carter* of counsel) for appellees.

[Oral argument December 5, 1956, by Mr. FitzGibbon and Mr. Carter]

Before O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, 91 Treas. Dec. 14, Abstract 59875, overruling the collector's classification of the merchandise here involved, which is known as "Teepol," and sustaining the importers' protest as amended.

The merchandise was classified by the collector as an ester not specially provided for, under paragraph 37 of the Tariff Act of 1930, and the importer protested claiming that it should have been classified as soap under paragraph 80 of the Act. After trial of the issues raised by that protest, the Customs Court overruled the protest, 30 Cust. Ct. 180, C. D. 1517, without sustaining the collector's classification, and indicated that the merchandise should have been classified as a non-enumerated manufactured article under paragraph 1558.

The importer moved for a rehearing for the purpose of amending its protest to conform to the evidence, and that motion was granted by the court over opposition by the Government. The importer then moved to add a claim for classification under paragraph 1558 and that motion was also granted by the court over the Government's objection. Thereupon the case was reopened, further testimony was

taken, and the court rendered a further decision sustaining the amended protest. The Government appealed from that decision, but the importer filed no cross appeal from the denial of the original protest and accordingly the issue as to whether the merchandise should have been classified as soap is not involved here.

The pertinent paragraphs are as follows:

Par. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

Par. 37. Ethers and esters: Diethyl sulphate and dimethyl sulphate, 25 per centum ad valorem; ethyl acetate, 3 cents per pound; butyl acetate and amyl acetate, 7 cents per pound; ethyl chloride, 15 cents per pound; ethyl ether, 4 cents per pound; and ethers and esters of all kinds not specially provided for, 25 per centum ad valorem; *Provided*, That no article containing more than 10 per centum of alcohol shall be classified for duty under this paragraph.

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

It is contended by the Government that the Customs Court erred in granting the importers' motion for rehearing. That motion was made for the purpose of obtaining leave to amend the protest, and the court granted such leave under its Rule 6 (c) which provides that "a party may amend his protest * * * at any time by leave of court, and such leave shall be freely given when justice so requires."

The Government asserts that if it becomes the established practice to permit such amendments as that made in the instant case, importers may file protests setting forth any convenient claim and may then rely upon the decision of the Customs Court to point out the proper classification, after which their protests may be correspondingly amended. In the present case, however, there is nothing to indicate that the original protest was not filed in good faith or that it was filed merely as a fishing expedition with a view to obtaining an opinion from the Customs Court as to what the proper classification should be.

The amendment of pleadings and the granting of rehearings are matters which ordinarily rest within the sound discretion of the court of original jurisdiction and the rulings of that court on such matters will not be disturbed on appeal unless they are found to be manifestly erroneous. We have carefully considered the record of the present case in the light of the contentions advanced by the Government but we have found no such error as would justify reversal of the action of the Customs Court in granting a rehearing and permitting amendment of the protest.

It is the position of the Government that the collector's classification of the instant merchandise under the provision of paragraph 37 for "esters of all kinds" should be sustained or, alternatively that

classification should be made under paragraph 5 as a salt, a chemical compound or a mixture.

As above indicated, the merchandise is known as "Teepol." It is used principally as a detergent but may be used in the making of other end products. The process by which it is made was briefly described by the importers' witness Paige as follows:

\* \* \* Certain waxy materials are cracked to give products known as olefins. A selected cut of these olefins is the base material proper. That is reacted with sulphuric acid, neutralized with caustic soda and subsequently extracted and purified to produce Teepol as marketed.

The testimony as to the nature and composition of "Teepol" is not entirely consistent. The following excerpts are typical:

Importers' witness De Nie:

\*        \*        \*        \*        \*        \*        \*

A. It is a soap. It is sodium salt with a strong acid.

\*        \*        \*        \*        \*        \*        \*

A. It is the sodium salt of an alkyl sulfuric acid.

\*        \*        \*        \*        \*        \*        \*

A. Undoubtedly a salt.

\*        \*        \*        \*        \*        \*        \*

Witness: \* \* \* So, if I say the product is salt, this does not necessarily mean that the product is salt and salt only and if you went all along the molecules you wouldn't find something else.

\*        \*        \*        \*        \*        \*        \*

Importers' witness Snell:

\*        \*        \*        \*        \*        \*        \*

A. I would say that it is a salt and I would say that there is in the structure an ester grouping which is unimportant to its main properties.

\*        \*        \*        \*        \*        \*        \*

Government witness John Ross:

\*        \*        \*        \*        \*        \*        \*

A. Yes, it is an ester.
Q. \* \* \*. Is it also a salt?
A. It is also a salt.

\*        \*        \*        \*        \*        \*        \*

A. The ester group is very essential to Teepol.

\*        \*        \*        \*        \*        \*        \*

Government witness Eckweiler:

\*        \*        \*        \*        \*        \*        \*

A. It is a chemical compound which has both characteristics, those of a salt and those of an ester.

\*        \*        \*        \*        \*        \*        \*

A. It is also a salt, I would like to qualify that slightly, that it is not a single chemical compound since there are a number of carbon compounds in it; it is actually a mixture of chemical compounds.

\*        \*        \*        \*        \*        \*        \*

On the basis of the foregoing excerpts and other similar testimony by witnesses for both parties, we conclude that the following statement by the Customs Court is correct:

"Teepol," however, is more than an ester. It is a commodity, resulting from several operations, involving chemical adjustments and reactions, and employing a variety of materials. The series of processes produces a manufactured product, possessing a combination of different chemical characteristics that impart properties peculiar to "Teepol," the finished article. * * *

In view of the composite nature of "Teepol" and the fact that its characteristics are not wholly those either of a salt or an ester, we are of the opinion that the Customs Court properly held that it cannot be classified as an ester under paragraph 37 of the Tariff Act of 1930; and for similar reasons it cannot properly be classified as a salt under paragraph 5.

In order to justify either of those classifications it would be necessary to show that "Teepol" is, in all its essential characteristics, an ester or a salt. The fact that it has some of the properties of each of those groups, shows that it cannot properly be regarded as either an ester or a salt, but is a product distinct from either group.

It remains to be determined whether "Teepol" should be classified under paragraph 1558 as an article "manufactured, in whole or in part, not specially provided for," as found by the Customs Court, or under paragraph 5 as a chemical compound or mixture, as contended by the Government.

A chemical compound, as defined by Webster's New International Dictionary (1949) is "A distinct substance formed by a union of two or more ingredients in definite proportions by weight." It is evident "Teepol" does not satisfy that requirement for, as stated by Eckweiler, "there are a number of carbon compounds in it." Accordingly, if "Teepol" is to be classified under paragraph 5, it must be as a mixture of compounds.

Among the definitions of "mixture" given by Webster's Dictionary, the one most pertinent to the present case appears to be: "That which results from mixing different ingredients together;" and a similar definition is found in Funk and Wagnall's New Standard Dictionary (1925), namely "Something resulting from or obtained by mixing."

It would appear that the natural meaning of the word "mixture" should be limited to an association of materials produced by an actual mixing operation, as distinguished from one in which the materials are found together in nature or are jointly produced by some artificial process other than mixing, and this seems to be the view which has been taken in prior decisions.

Thus in *United States* v. *Davies, Turner & Co., et al.*, 5 Ct. Cust. Appls. 196, T. D. 34325, the classification of a ground ore as a chemical mixture was held to be incorrect. In so holding the court said:

We do not think the collector's assessment was correct, because paragraph 3, which it is unnecessary to quote, does not relate to wholly natural products such as the ore in this case, but, in the part relied upon for the assessment, refers to

*chemical compounds and mixtures.* The fair implication of this language, in view of its context, is that there must be some artificial mixture of chemicals or artificial compounding of substances to produce a chemical compound and that a natural ore which has received no treatment whatever except the mechanical one of grinding is not within the paragraph.

Similarly in *Ungerer & Co., Inc.* v. *United States*, 15 Ct. Cust. Appls. 279, T. D. 42469, the court said:

In view of our former holdings that the words "mixtures" and "combinations" generally mean the artificial mixing or combining of different ingredients, we admit, for the purposes of this decision, the soundness of importer's contention. See *United States* v. *Davies, Turner & Co. et al.*, 5 Ct. Cust. Appls. 196, and *Monticelli Bros.* v. *United States*, 8 Ct. Cust. Appls. 21, and cases therein cited.

A typical example of a chemical mixture was involved in *Strohmeyer & Arpe Co.* v. *United States*, 2 Ct. Cust. Appls. 285, T. D. 32035. The merchandise there involved was "a mechanical mixture of lime, carbonate of lime, and manganese oxide or dioxide," with respect to which it was said that:

\*      \*      \*      \*      \*      \*      \*

To make up the goods under discussion these chemicals were commingled in such a way as to preserve their individual properties and separate chemical nature, and admittedly such an association of materials constitutes not a chemical compound but a mechanical mixture. From this it would seem to follow that the resultant product was a mixture of chemicals, or, in short, a chemical mixture.

In this connection it should be remembered that a mingling of chemicals must result either in a chemical compound, destroying the identity of the original materials, or in a mere mixture in which the chemical individuality of the original materials is preserved. Scientifically speaking, mere mixtures of chemicals are known as mechanical mixtures.

\*      \*      \*      \*      \*      \*      \*

The record discloses that "Teepol" is not produced by a mere mixing of its ingredients but by an elaborate process involving cracking, chemical reaction and extraction and may include different chemical compounds in relatively close association. We are therefore of the opinion, in view of the decisions above-cited and of the commonly accepted meaning of the word "mixture," that "Teepol" is not a mixture within the meaning of paragraph 5. On the other hand, as pointed out by the Customs Court in the instant case, "Teepol" is a finished commercial product, a synthetic detergent, and is made by a series of steps which definitely constitute it a manufactured commodity.

On that basis its classification under paragraph 1558 was proper, and the decision of the United States Customs Court is accordingly *affirmed.*

JOHNSON, Chief Judge, disqualified himself from participating in this appeal.

JACKSON, Judge, retired, sat for COLE, Judge, who was absent because of illness.