STATE OF IOWA ex rel. R. L. SALEY, Appellee, v. BOKMEYER
    BROTHERS et al., Appellees; HARTZ & BAHNSEN
              COMPANY et al., Appellants.

INTOXICATING LIQUORS: Alcoholic Compound Unfit for Beverage
1  Purpose.   Evidence reviewed, and held sufficient to justify a
   finding that the alcoholic bitters in question were not so com-
   pounded with other ingredients as to destroy their use as a
   beverage.

INTOXICATING LIQUORS: Mail Orders—Place of Sale.  A mail
2  order for intoxicating liquors, filled by shipment from another
   state over the route of a common carrier, is deemed a sale at
   the place of delivery of the liquors.  (Sec. 2382, Code Suppl.
   Supp., 1915, as amended by Ch. 248, Acts 37 G. A.)

*Appeal from Franklin District Court.*—R. M. WRIGHT,
                        Judge.

                  DECEMBER 19, 1919.

   SUIT in equity, to abate a liquor nuisance and to en-
join the defendants from selling intoxicating liquors.  There
was a decree against all defendants, as prayed.  *Reversed*
as to the defendant Foster; *affirmed* as to the other de-
fendants.

   *Cook & Balluff,* for appellants.

   *H. M. Havner,* Attorney General, *B. J. Powers, R. L.
Saley, and E. P. Andrews,* for appellees.

   STEVENS, J.—I.  The defendants Bokmeyer Brothers
and C. F. Bokmeyer are engaged in the drug business at
Sheffield, Iowa, and the defendants Hartz & Bahnsen Com-
                        pany are located at Rock Island, Illinois,
1. INTOXICATING        and  manufacture and sell at wholesale a
   LIQUORS: alco-
   holic com-          compound known as Black Hawk Stomach
   pound unfit
   for beverage        Bitters.  The defendant Herbert Foster is
   purpose.
                       a traveling salesman for Hartz & Bahnsen

Company. In February, 1918, the sheriff of Franklin County seized two barrels of Black Hawk Stomach Bitters in bottles, under a search warrant, and took same from the possession of the defendants Bokmeyer Bros. and C. F. Bokmeyer, as intoxicating liquors. Later, this suit to enjoin the defendants from maintaining a nuisance, and from keeping for sale and selling intoxicating liquors, was instituted. A prepared formula for the manufacture of the Bitters, showing the contents and exact quantity of each ingredient, was offered in evidence, but it is not necessary to include it herein. The compound is 23 per cent alcohol, and each 45 gallons, the quantity manufactured at a time, is supposed to contain 12½ pounds of cascara bark.

The contention of the defendant is that the quantity of cascara included in the mixture is so great that it cannot possibly be used as a beverage. The decision of this case turns largely upon a question of fact: that is, whether the bottles seized contained cascara in quantities forbidding its use as a beverage. Wm. H. Harrison, assistant chemist for the dairy and food department of the state of Iowa, called as a witness by the plaintiff, testified that he was a graduate of Northwestern University, and was for four years an instructor in chemistry in that institution, and that, before coming to Iowa, he was employed by the state food commission of Illinois. A bottle of Black Hawk Stomach Bitters, taken from one of the barrels in question, was delivered, sealed, to Mr. Harrison, who made a chemical analysis thereof for the purpose of ascertaining its contents. He testified that he found it contained 23.6 per cent by volume of alcohol, 6 per cent total solids, .1 per cent of ash, and small amounts of rumex, tumeric, and cassia, 4.1 grains of ordinary cane sugar, and no cascara. W. B. Zuker, professor of chemistry at Highland Park College of Pharmacy, testified that he made a careful analysis of a bot-

tle of the same compound, taken from one of the barrels seized, and found it to contain 22.82 per cent alcohol by volume, 5.92 per cent total solids, ash .11 per cent, sugar 4.075 per cent, some cinnamon and cassia, but no cascara.

Opposed to this testimony was that of R. A. Kuever, associate professor of the College of Pharmacy at the Iowa State University, who testified that he also made an analysis of the contents of two bottles which were taken from the barrels in question, of four bottles sent to him by the defendant Hartz & Bahnsen Company, and a quantity manufactured by him from the formula furnished by it; that he found the contents of the bottles taken from the barrels in question to be about 23 per cent alcohol. He also found a quantity of each of the several ingredients mentioned in the formula, and that there were 15 grains of cascara to each fluid ounce, or ordinary dose. A comparative test of the contents of the bottles received from the sheriff, the bottles received from the defendant, and the small quantity compounded by the witness, was made, and revealed all of the ingredients named in the formula in approximately identical quantities.

A. N. Brandenburt, in charge of the manufacture of the Bitters, testified that the mixture was compounded in strict conformity to the formula, and that all of it contained the same relative quantity of cascara. His testimony was, to some extent, corroborated by Mr. Bahnsen, who also testified that the compound had been approved by the commissioner of internal revenue, and was sold without the payment of a government tax. This witness, personally, does not take part in its manufacture.

Two physicians residing at Sheffield were examined on behalf of the defendant. Each expressed the opinion that, if the compound in fact contained 16.2 grains of cascara to each fluid ounce, it would not be suitable for use as a beverage; that cascara taken in that quantity would operate

as a laxative, and if taken in a larger quantity, as a cathartic. Neither of the medical witnesses recommended it for medicinal use, and at least one of them expressed the opinion that, if the cascara were omitted, it would be a good drink. Dr. Schwab, one of the physicians, also testified that, shortly after the drug stores surrendered their permits to sell liquor, men who first began to use the Bitters complained that it physicked them very much, and that a number visited his office for treatment on account thereof. Several persons residing in the vicinity, who had used the Bitters according to directions, testified that it acted as a laxative, and one witness said that he drank some at the request of a friend, whose name he did not remember, and that, on account of its effect as a laxative, he did not find it suitable as a beverage.

The competency of each of the chemists who analyzed the Bitters is not seriously questioned. One separate bottle was analyzed by each of the State's witnesses, and two bottles by the defendants' witness. It is, in effect, conceded that the mixture could be used as a beverage, if it were not for the cascara. The evidence does not disclose whether the four bottles, the contents of which were analyzed, were taken from the same barrel or not, nor does it show that the two bottles analyzed by Harrison and Zuker were taken from one barrel, and the bottles sent to the State University from the other; but the result of the analysis is utterly irreconcilable. It is to be regretted that a further analysis by a wholly disinterested chemist was not obtained. The mixture, if compounded of the ingredients and in the proportion indicated by the formula offered in evidence, while having little medicinal value, would hardly be suitable for use as a beverage. In fact, the evidence does not show more than an attempt to use it for that purpose. The defendants Bokmeyer Bros. and C. F. Bokmeyer, previous to the commencement of this suit, received large consignments of in-

toxicating liquors, had an internal revenue receipt posted
in their place of business, and have not appealed from the
decree of the court permanently finding them guilty of
maintaining a nuisance, and enjoining them from keeping
for sale or selling intoxicating liquors; so that the mix-
ture in question was taken from a place judicially deter-
mined to have been one in which intoxicating liquors were
kept for sale and sold in violation of law. The question of
fact presented, therefore, in so far as it involves the other
defendants, is a very perplexing one. The analysis of the
two bottles introduced in evidence by the State, made sep-
arately by Harrison and Zuker, showed practically identi-
cal results; whereas the two bottles analyzed at the in-
stance of the defendant showed materially different results,
except as to the quantity of alcohol. The latter, according
to the testimony, contained sufficient of the extractive quali-
ties of cascara to render the same unfit for use as a bever-
age. If all of the experts had analyzed the contents of the
same bottle, with the results indicated by the analysis made,
we would readily conclude that some of the witnesses were
either incompetent or lacking in veracity. We cannot, up-
on the record before us, however, say that any expert wit-
ness has testified falsely. All appear to have been qualified
to make the test. Each examined the contents of a differ-
ent bottle. Whether the bottles analyzed by the witnesses
for the State were taken from one barrel, and the mixture
analyzed by the witness for the defendant from the other,
does not appear. The testimony of the State's witnesses is
positive, and based upon a scientific analysis of the com-
pound. It is to be regretted that a further analysis of the
contents of both barrels was not obtained.

The decree of the court below enjoins the defendants
from selling intoxicating liquors in the state of Iowa. The
fact that the preparation contained a large percentage of
alcohol is by no means conclusive that the sale thereof is

prohibited by law in this state. If it is so compounded with other substances as to destroy its character and use as a beverage, and it is shown to possess medicinal qualities, the sale thereof is not prohibited. The question is one of fact. All agree that the failure to include cascara in the mixture leaves it suitable for use as a beverage. If sold in this condition in this state, it violates our statute prohibiting the sale of intoxicating liquors. The trial court found that at least one of the bottles, the contents of which were analyzed by the State's witnesses, contained no cascara, and was, therefore, sold in violation of law.

We think the evidence affirmatively shows that none of the mixture analyzed by the witnesses for the State contained cascara. We cannot, therefore, disturb the judgment of the court below. The particular bottles seized were not, however, sold by the defendant Foster. It is shown that the defendants Bokmeyer Bros. and C. F. Bokmeyer have purchased Black Hawk Stomach Bitters of him, but whether they contained the quantity of cascara necessary to destroy their properties as an intoxicant is not shown. We hardly think the evidence justified a decree against this defendant, and, as to him, it is reversed.

II. . The only other point argued by counsel is that the Bitters were purchased by mail, the order being accepted at Rock Island, Illinois, and that, therefore, a sale in this state was not shown. Chapter 248, Acts of the Thirty-seventh General Assembly, amending Section 2382 of the Supplemental Supplement to the Code, 1915, provides:

2. INTOXICATING LIQUORS: mail orders: place of sale.

"And in case of a sale in which a shipment or delivery of such liquors is made by a common or other carrier, the sale thereof shall be deemed to be made in the county wherein the delivery thereof is made by such carrier to the consignee, his agent or employee."

The delivery of the compound in question was made to

the defendant at Sheffield, and therefore, under the above enactment, the same was made in this state. The judgment and decree of the court below is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.