STATE OF IOWA, Appellee, v. FRANK C. HIGGINS, Appellant.

**APPEAL AND ERROR:** Failure to Except—Instructions in Criminal
1  Case. Failure to except to instructions precludes review on appeal,
whether the cause be civil or criminal. The plea will not prevail
that appellant has not had a fair trial *because counsel did not except.*

**TRIAL:** Instructions—Correct but not Explicit. Instructions which are
2  correct are all-sufficient, in the absence of a request for more elabora-
tion.

**INTOXICATING LIQUORS:** Medicinal Preparations. Medicinal prep-
3  arations containing alcohol may not be legally sold if they are cap-
able of being used as a beverage.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MAY 10, 1921.

REHEARING DENIED OCTOBER 1, 1921.

THE defendant was indicted for maintaining a liquor nui-
sance, and upon trial was convicted. He appeals.—*Affirmed.*

*Clarke & Cosson,* for appellant.

*Ben J. Gibson,* Attorney General, *B. J. Flick,* Assistant
Attorney General, and *A. G. Rippey,* County Attorney, for ap-
pellee.

FAVILLE, J.—The appellant was indicted by the grand jury
of Polk County for maintaining a liquor nuisance. During the
trial, it was shown that he was the manager of a drug store that
was owned by his wife. He had full charge of the business, and
hired the employees. A witness for the State purchased at the
store from these employees, at a time when the appellant was
present, different kinds of liquors. The drug store was also
searched under a search warrant, and certain liquors therein
found were seized and taken. Upon the trial of the case, a
chemist testified in regard to the liquor so taken. As we gather

it from the record, the liquor so found was of four different classes. One of these is what is known as "denatured alcohol," which the chemist described as being grain alcohol with about 10 per cent of wood alcohol added to it, and which he testified would be poisonous, and could not be used as a beverage. He said that it was used for automobile radiators and as a cleansing agent, and that it was not used as an intoxicating liquor. One kind was in a bottle which was labeled "Beef, Iron and Wine," of which no chemical examination was made and no testimony offered as to its contents. Another bottle was described by the chemist as being "Jamaica Ginger," ordinarily called "Jack." The chemist testified that it contained about 29.6 per cent alcohol and a weak tincture of ginger, and that it was intoxicating in its character. He also testified that it was supposed to be used for medicinal purposes, and that it is a compound found in the United States Pharmacopœia.

A witness also testified that he procured certain liquor from the store by asking for alcohol, and asked the clerk to put orange juice or lemon juice in it, as a flavor, and that he did so. On analysis, this was found to contain alcohol and to be intoxicating, and that it did not contain any wood alcohol. The clerk denies that any such sale was made to the witness. There was a square conflict in the evidence as to whether the purchases were made, as claimed.

I. Complaint is made of the instructions that were given to the jury. We are confronted at once with the fact that the record fails to show that any exceptions were taken to the instructions, as required by Chapter 24 of the Acts of the Thirty-seventh General Assembly. Said act is as follows:

1. APPEAL AND ERROR: failure to except: instructions in criminal case.

"Either party may take and file exceptions to the instructions of the court or any part of the instructions given or to the refusal to give any instructions as requested within five days after the verdict in the cause is filed or within such further time as the court may allow and may include the same or any part thereof in a motion for a new trial, but all such exceptions shall specify the part of the instructions as excepted to, or of the instructions asked and refused and objected to, and the grounds of such objections."

The verdict was returned on the 8th day of April, 1920. More than five days later, to wit, April 17, 1920, a motion for a new trial was filed. On appeal, it is now urged that the court erred in giving one instruction to which no exception was taken at that time, and to which no reference was made in any way in this motion for a new trial. It is obvious that, unless we are to utterly ignore the plain provisions of this statute, we cannot consider the alleged errors in any of these instructions, upon this record. We are cited to Section 5462 of the Code, which provides:

"The Supreme Court must examine the record * * * and render such judgment on the record as the law demands; it may affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial. * * *"

It is contended that the appellant has been denied a fair and impartial trial; and that, under this statute, we should reverse because thereof. It is claimed that such have been our holdings.

In *State v. Schwab*, 112 Iowa 666, we said:

"Certainly, a criminal defendant may waive error on appeal. He does so in every instance where an exception is not taken below."

In *State v. Barr*, 123 Iowa 139, we said:

"We know of no reason why counsel in a criminal case should not make his objections as specific and definite as is required in a civil case, in order to raise a question of law for consideration upon appeal."

In *State v. Burns*, 181 Iowa 1098, we said:

"He has, however, a fair and impartial trial when opportunity is given to him to object and except to what is done to his prejudice upon the trial."

Where a defendant is represented by counsel in the trial of a case, and proceeds to trial, and no exceptions are taken to the instructions, as required by the statute, we cannot consider them on review. Counsel for the appellant urge, however, that we should regard these alleged errors on the broader proposition that it appears on the entire record that the appellant has not had a fair trial, and therefore we should reverse, even though

no specific rulings have been properly objected to, and though no proper exceptions were preserved.

In the *Barr* case, we reversed because, upon the whole case, it appeared that the defendant did not have a fair trial, in that he was forced to go to trial with new counsel, without an opportunity to prepare. We said:

"We reverse the case, therefore, not on any particular ruling of the court, but rather, on the general ground that the verdict does not appear to have been the result of a fair trial."

In the *Burns* case, we also reversed upon the theory that the defendant had been denied a fair trial, because, where the defendant was charged with carrying concealed weapons, there was a failure to charge or prove that he did not at that time have a permit to go armed, and therefore one of the essential elements of the offense was utterly lacking. No such situation is presented in the instant case. Appellant was represented by counsel, and there was no mishap, no misfortune, no untoward circumstance, that in any manner prevented the appellant from having a fair and impartial trial. We cannot say that, because counsel then representing the appellant did not see fit to preserve exceptions to the instructions, or to request instructions in behalf of appellant, we can ignore the plain provisions of the statute in regard to said matters, and hold that, because of failure in this regard, the appellant has been denied a fair trial. To so declare would not only pay a premium on laxity in the trial of cases, but would amount to a complete abrogation of statutory requirements. These statutory provisions are essential to orderly and proper procedure in our courts. We cannot ignore them and reverse cases, either civil or criminal, because of a claim that a party has not had a fair trial because his counsel has not preserved his legal rights in the manner pointed out by the statute. It appears that every essential element of the crime charged was supported by proof.

For a further discussion of the legal question involved herein, see *Crow v. Casady*, 192 Iowa 1357.

II. It is strenuously urged that the court should have instructed the jury that the appellant could not be indicted for keeping or selling denatured alcohol, and that the jury may have found him guilty because the evidence showed that he

2. TRIAL: instruc-    kept and sold denatured alcohol.  No instruc-
tions: correct
but not ex-    tion whatever was asked by the appellant on
plicit.    this subject-matter.  But the court did instruct
the jury that "any liquor is an intoxicating liquor which con-
tains any per cent of alcohol and which may be used as a
beverage."

The undisputed evidence showed that denatured alcohol
cannot be used as a beverage,·and that it is poisonous.  If the
appellant desired a more specific and definite instruction, he
should have asked for it; but we do not think the jury could
have been misled, in view of the instruction that was given.
While the court did not refer to denatured alcohol by name, it
made it very clear that the appellant could not be convicted
unless he sold an intoxicating liquor which could be used as a
beverage; and the undisputed testimony showed that denatured
alcohol could not be used as a beverage.  There was no error
at this point.

III.  It is urged that the Jamaica ginger, or so-called
"Jack," is a medicinal preparation recognized by the United
States Pharmacopœia, and that, therefore, the appellant could
3. INTOXICATING    not be held liable for selling it as an intoxicat-
LIQUORS:
medicinal    ing liquor.
preparations.    We had occasion to consider a somewhat
similar situation in *State v. Bokmeyer Bros.*, 187 Iowa 1312, in
which we said:

"The fact that the preparation contained a large percentage
of alcohol is by no means conclusive that the sale thereof is pro-
hibited by law in this state.  If it is so compounded with other
substances as to destroy its character and use as a beverage,
and it is shown to possess medicinal qualities, the sale thereof
is not prohibited.  The question is one of fact.  All agree that
the failure to include cascara in the mixture leaves it suitable
for use as a beverage.  If sold in this condition in this state, it
violates our statute prohibiting the sale of intoxicating liquors.
The trial court found that at least one of the bottles, the con-
tents of which were analyzed by the State's witnesses, contained
no cascara, and was, therefore, sold in violation of law."

·In *State v. Snyder*, 185 Iowa 728, we considered a case

where the evidence showed the sale of liquor labeled "Jamaica ginger." In that case we said:

"The chemist who made the analysis testified that the liquor which he analyzed would be a tincture of a drug, according to the United States Pharmacopœia, and that a dose, when used as a medicine, would be about a teaspoonful; that he found the compounds he analyzed to be in accordance with the compounding with the tincture of ginger, as prescribed by the Pharmacopœia, but he further testified that, because of the alcohol, the liquor labeled Jamaica ginger could be used as a beverage; that it would depend on the person taking it; that a drinking man could drink it."

In the instant case, it appears from the evidence that the witness Artis asked the clerk in the store if he could get a little liquor, and the clerk replied, "Do you want a little Jack?" —which, it appears, is another name for Jamaica ginger,—and furnished him with a bottle. It was for the jury to say, under all the circumstances, for what purpose this article was being kept and sold.

There was evidence, also, from which the jury would have been warranted in finding that a clerk in the store sold to the witness Artis, as a beverage, a liquor that contained alcohol and orange juice, and that the same was intoxicating. The witness said that he bought it as a beverage. The chemical analysis showed that it contained grain alcohol. While this specific sale is denied, it was a question for the jury to determine whether or not it took place, and the character of the liquor claimed to have been bought.

It is true that the court might well, upon request of the appellant, have instructed the jury more explicitly in regard to the claims made by the appellant; but we have examined the record with care, and we do not find that the appellant was denied a fair and impartial trial in any such way as should justify interference on our part. There was evidence in the record on every essential element of the crime charged, and sufficient to meet the requirements of the law in criminal cases. The substantial rights of the appellant were in no way denied in the progress of the trial. We find nothing in the record that would warrant interference on our part.

The claims of the appellant have been presented by eminent counsel with great skill and sincerity before this court. It is proper to observe that the counsel who represent the appellant in this court did not appear in the case in the trial court.

Since we find no error in the record prejudicial to the rights of the appellant, the judgment of the trial court must be, and the same is,—*Affirmed.*

EVANS, C. J.; STEVENS and ARTHUR, JJ., concur.