## UNITED STATES v. STUBBS.

(District Court, S. D. New York. November 22, 1898.)

STAMP TAX—PROPRIETARY ARTICLES—"UNCOMPOUNDED MEDICINAL DRUGS."

    The terms "uncompounded medicinal drugs or chemicals" in section 20 of the act of June 13, 1898 (chapter 448), are used in their pharmaceutical sense, and mean a drug or chemical that is not a mixture of different substances, but a single entity or substance only, though this substance may be a chemical compound. Patent medicines and other proprietary articles that are mixtures, are taxable under Schedule B; but those that are not made by mixing or compounding in the pharmaceutical sense, but are single distinct substances, whether elementary or strict chemical compounds, are within the exception of section 20 and need not be stamped.

At Law.

Henry L. Burnett, U. S. Atty., and Arthur M. King, Asst. U. S. Atty. Dickerson & Brown, for claimant.

BROWN, District Judge. The above libel was filed to enforce an alleged forfeiture of a quantity of Aristol, Phenacetine and 10 other articles, under sections 20 and 22 of the act of June 13, 1898 (chapter 448), for being offered for sale without being stamped as proprietary articles. The only question raised was whether the articles are by that act subject to a stamp tax. A jury trial being waived, the cause has been heard by the court without a jury.

It was admitted that all the articles in question are covered by patents and a trade-mark, and that all are proprietary medicinal articles. As such, according to Schedule B (page 462), all would be subject to a stamp tax without doubt, except for the proviso of section 20. The latter section provides:

"That no stamp tax shall be imposed upon any uncompounded medicinal drug or chemical, nor upon any medicine sold to or for the use of any person which may be mixed or compounded for said person according to the written recipe or prescription of any practicing physician or surgeon, or which may be put up or compounded for said person by a druggist or pharmacist selling at retail only. The stamp taxes provided for in Schedule B of this act shall apply to all medicinal articles compounded by any formula, published or unpublished, which are put up in style or manner similar to that of patent, trade-mark, or proprietary medicine in general, or which are advertised on the package or otherwise as remedies or specifics for any ailment, or as having any special claim to merit, or to any peculiar advantage in mode of preparation, quality, use or effect."

This specific proviso establishes an exception to the general language of Schedule B and excludes from liability to tax all such articles as come within the proviso, even though they may be proprietary medicinal articles or covered by a patent or trade-mark. For the latter part of the clause above quoted shows clearly that in framing this proviso, Schedule B was present in the mind of the framers of the law, since it distinctly declares that "all medicinal articles compounded by any formula, which," etc., shall be subject to the "stamp

taxes provided for in Schedule B." Thus among proprietary or patented medicinal articles, and articles that are put up in a similar manner, the distinction is clearly pointed out between those which are compounded medicinal drugs and those which are not; the former being taxable and the latter exempt. And the terms "compounded," and "uncompounded medicinal drugs or chemicals," must be interpreted according to the common use of those terms in the business and among the persons referred to in the act, as shown by the context in the provisions in which they occur.

The evidence produced before me accordingly relates (1) to the meaning of the phrase "uncompounded medicinal drug or chemical"; and (2) to the phrase "all medicinal articles compounded by any formula"; there was but little evidence, however, bearing on the latter point.

The testimony leaves no doubt that all of the 12 articles seized are highly complex chemical substances, more or less largely used as medicines, and valued as such. The chemical constituents of all of these articles are known, and their properties. The arrangement of the molecules is also known in all except in Protargol. Though complex in chemical composition, each article is proved to be strictly a single chemical substance, entity, or unit. In each the constituent elements are united by chemical affinity, and by a peculiar arrangement of the molecules, which give to each of these articles properties and peculiarities distinguishing it not only from its own elementary constituents, but from every other known substance.

Though each of these articles is a single definite chemical substance, however, inasmuch as each is a chemical compound, consisting of several different elements chemically combined, and is a medicinal drug or chemical, it is contended by the government that it is not "uncompounded" within the proviso of section 20, above quoted; but that it is a drug compounded of the different chemical elements that enter into its combination and therefore not an "uncompounded drug." The claimant contends that this construction of the phrase "uncompounded medicinal drug" is erroneous, resulting from a confusion of the terms "compound, compounded, and uncompounded," which it is claimed are altogether distinguishable and different. The evidence is very clear and convincing that while the term "compound" is in common use in chemistry, as in such phrases as "a chemical compound," or "a compound formed," etc., etc., the words "compounded" and "uncompounded" are wholly unknown to chemical science, and are neither found in chemical text-books nor used in the chemical laboratory. The term "compound" signifies in chemistry a substance formed by a chemical union of its constituent elements, and never a simple mixture in which a chemical union of the ingredients does not occur. In pharmacy, on the other hand, a "compound" is merely a mixture of different ingredients, without reference to chemical union; and the word "compounded" is employed in ordinary and common use in pharmacy to indicate something formed by a mixture of ingredients without chemical union. A compounded drug, is a drug made up of other articles, drugs or chemicals mixed together, by trituration, by rubbing together, or by dissolving, etc. Such an article is not a

91 F.—39

single definite chemical substance, but "compounded" by the mere mixture of two or more chemical substances, each of which retains its own separate properties, which is not true of a chemical compound. The verb to "compound" means to mix or prepare. To "compound" a prescription is to prepare it for use, or put together the different articles specified in the prescription so as to be fit for the patient; and this is the ordinary and common use of the word with druggists. An "uncompounded medicinal drug," in pharmacy, is a drug not made up of two or more constituent drugs or chemicals, but a single drug as prepared without admixture for the pharmacist's use and with no reference to its elementary chemical constitution, whether simple or compound. Iron, sulphur, iodine are examples of simple chemical elements that are drugs when suitably prepared for medicinal use. Quinine, opium, etc., are common examples of single "uncompounded medicinal drugs," though "compounds" chemically considered.

The witnesses called by the government do not in substance differ from the explanation of terms as given by the defendant's witnesses to the effect above stated. None of them testify that either of the articles seized is a "compounded medicinal drug or chemical," or "compounded by any formula"; while many of the claimant's witnesses testify that each of these articles is a single chemical substance, and an "uncompounded medicinal drug."

In order to uphold the government's claim that the articles in question are taxable, I should be obliged to disregard the great weight of evidence in the case, and to hold that the phrase "uncompounded medicinal drug" is used in the statute in a sense not only unknown to science, but also unknown to those whose business it is, as pharmacists or apothecaries, to deal in drugs and chemicals, and in respect to whom especially it must be considered that this proviso was framed. It would certainly be unreasonable to put any such construction upon the phrases of this act. The term "uncompounded" is used once and the term "compounded" three times in the proviso above quoted. The term "compounded" is twice used obviously in reference to pharmacists, druggists or apothecaries in putting up drugs, which is their peculiar business. The proviso declares that no tax shall be imposed upon any medicine "* * * mixed or compounded for such a person according to the written recipe or prescription of any practicing physician, or which may be put up or compounded for such person by a druggist or pharmacist selling at retail only." These obviously have reference to the pharmacist alone. The language used by the act is his language; and it must be interpreted as it is ordinarily understood in his art. The word "compounded" as used a little later in the same proviso in reference to medicinal articles compounded by any formula, is to be interpreted, as the context shows, in the same sense; that is, mixed, put together, or prepared, according to any formula published or unpublished. The evidence is clear that none of the articles in question are prepared in that way. The preparation of Phenacetine, a type of all, by the mixing of chemical substances in order to produce chemical reactions resulting in a new and distinct chemical substance or entity, is a wholly different operation from that described or intend-

ed by the act as "compounded by any formula." The latter is a mere mechanical operation resulting only in a mechanical mixture; the former is a refined chemical elaboration, resulting in a new chemical substance,—an uncompounded medicinal drug.

The evidence shows that the articles in question are wholly different in kind from what are commonly termed patent medicines or the articles usually put on the market and advertised to the public as such, or advertised as specifics for diseases. These articles are prepared for the use of physicians upon prescriptions to be put up by the druggist; they are advertised for these purposes only; and this distinction separates them from the class of articles which seems to have been particularly in mind in the provisions of Schedule B, which are mostly if not exclusively mere compounded mixtures. Proprietary medicinal drugs or chemicals consisting of pharmaceutical extracts, tinctures, alkaloids, etc., are doubtless taxable, because they are not "uncompounded drugs," but compounded mixtures, retaining the qualities of their component parts, instead of exhibiting the new properties of a distinct drug or chemical substance. I do not perceive the practical difficulties urged as to the application of this distinction; and if even some such difficulties existed, it would not be a sufficient reason for not applying the distinction made by the proviso of the twentieth section wherever, as in this case, it is clear.

I am of opinion, therefore, that the articles in question are not taxable, but are exempted by the proviso of section 20 above quoted, and that no forfeiture of the articles in question was incurred by the failure to affix revenue stamps.