GUS REPPERT et al., Petitioners, v. HUBERT UTTERBACK, Judge, Respondent.

January 10, 1928.

Rehearing Denied June 26, 1928.

*Walter F. Maley* and *Thomas J. Guthrie*, for petitioners.

*Carl S. Missildine*, County Attorney, *Francis J. Kuble*, Assistant County Attorney, and *Vernon R. Seeburger*, for respondent.

De Graff, J.—The petitioners, Reppert and Veatch, are registered pharmacists, who, at the time in question and for many years prior thereto, were respectively engaged in the retail drug business in the city of Des Moines. Each of the petitioners was under an injunctional decree of the district court of Iowa in and for Polk County, restraining and enjoining him from keeping for sale, selling, or otherwise trafficking in intoxicating liquors in violation of law.

On or about January 4, 1926, proceedings in contempt were commenced against each of the petitioners in said court, and, in response to a citation, trial was had. The court made a finding of facts and conclusions of law adjudging the petitioners to be in contempt, and imposed a penalty therefor. It is to review this order and judgment that a writ of certiorari was issued by a justice of this court. The separate actions by the petitioners are consolidated, for the purpose of review, as the same legal propositions are involved in each proceeding.

There is but one question presented for determination. Are the petitioners herein guilty of contempt because, as registered pharmacists, they used government alcohol in their business as pharmacists, without first procuring a state manufacturer's permit? The practice of pharmacy in each state is regulated in the manner defined by the state legislature thereof, under the power commonly called the police power of the state, and is exercised

and defended on the ground of public welfare. The word "pharmacist" in modern legal nomenclature includes apothecary and druggist, and is all-inclusive. Bouvier's Law Dictionary (Baldwin's Century Ed.) 75.

A registered pharmacist is one who has qualified by training, education, and experience, and is so certified. His license, issued by the state board of pharmacy, recites that:

"He is a competent pharmacist fully qualified to conduct the business of compounding or dispensing drugs, medicines, or chemicals for medicinal use or to compound physicians' prescriptions," etc.

At the outset we ask, What powers and authority are prescribed by statute and conferred upon a registered pharmacist? With this matter defined, we then ask, What did the petitioners, as registered pharmacists, do, upon which a contempt could be predicated, with resulting penalty?

It may first be observed that the instant petitioners were not engaged in the sale of intoxicating liquors, and the fact that neither petitioner had a permit, as a registered pharmacist, to keep and sell intoxicating liquors, under Title VI, Chapter 100, Code of 1924, is wholly immaterial to any issue involved. The trial court expressly found that there was no evidence of an illegal sale of intoxicating liquor, as such, by either petitioner. The evidence is just as conclusive that neither petitioner was in possession of alcohol with the intent to sell contrary to law, or that any mixture was made or compounded by them containing alcohol that could be used as a beverage.

Each of the petitioners did have a permit from the United States internal revenue department, issued under the National Prohibition Act and regulations thereunder. Each petitioner was authorized under this permit, subject to the limitations of state law, to use alcohol for non-beverage purposes: (1) In the making or compounding of preparations unfit for beverage purposes recognized and defined in the United States Pharmacopœia or National Formulary; (2) in selling quantities not exceeding one pint to a person not holding permit to purchase, when medicated according to formulary set forth in Federal regulations; and (3) in compounding medicinal preparations on physicians' prescriptions, or otherwise medicated according to the standards set forth under Federal regulations.

What are the provisions of our state law relative to the matter in issue? The Pharmacy Act of this state reads:

"For the purpose of this title the following classes of persons shall be deemed to be engaged in the practice of pharmacy: 1. Persons who engage in the business of selling, or offering or exposing for sale, drugs and medicines at retail. 2. Persons who compound or dispense drugs and medicines or fill the prescriptions of licensed physicians and surgeons, dentists, or veterinarians." Section 2578, Code of 1924.

It is quite apparent, therefore, that, under both the Federal and the state law, the right of a pharmacist to use alcohol is recognized in the conduct of his business in compounding drugs and medicines and the filling of prescriptions of licensed physicians, surgeons, dentists, or veterinarians.

It is a matter of common knowledge that alcohol is required by a druggist as a solvent, preservative, or antiseptic, and the legislature recognized the fact that drugs and medicine require alcohol for purposes defined by medical and pharmaceutical authorities; so that the petitioners were clearly within the legitimate sphere of action as pharmacists in the use of alcohol in filling prescriptions and in compounding drugs and medicines.

We need not stop here. The statute (Pharmacy Act) offers further definitions. Section 2580, Code of 1924 reads:

"For the purposes of this chapter: 1. 'Drugs and medicines' shall include all substances and preparations for internal or external use recognized in the United States Pharmacopœia or National Formulary, and any substance or mixture of substances intended to be used for the cure, mitigation, or prevention of disease of either man or animals."

The statute defines the term "United States Pharmacopœia or National Formulary." Section 3029 (7), Code of 1924.

We turn to the "Pharmacopœia of the United States" (Official Edition, Tenth Decennial Revision, 1926), known as Exhibit 6 in this case, and we find that alcohol is an essential ingredient in the majority of substances or mixtures of substances intended to be used "for the cure, mitigation, or prevention of disease of either man or animals." To illustrate

with some of the substances, mixtures, or tinctures compounded by the petitioners:

"Spirit of camphor contains not less than 9.5 gm. and not more than 10.5 gm. of camphor in each 100 cc. Camphor 100 gm. alcohol, a sufficient quantity, to make 1000 cc. Dissolve the camphor in about 800 cc. of alcohol and add enough alcohol to make the product measure 1000 cc." Page 351.

Again—"Liniment of soft soap * * * —tincture of green soap. Soft soap 650 gm., oil of lavender 20 cc., alcohol, a sufficient quantity, to make 1000 cc." Page 205.

We will not incumber this opinion further by a recital of the substances compounded by the petitioners, as shown by the record, which substances or mixtures had alcoholic content, but recognized by the United States Pharmacopœia or National Formulary, such as spirit of ether compound (Hoffman's Anodyne), compound spirit of myrcia (bay rum), tincture of aconite, elixir aromatic, etc. The United States Pharmacopœia and the National Formulary are regarded by statute as the standard authority and official guide to a pharmacist in the compounding of drugs, medicines, and medicated preparations.

The alcohol belonging to the petitioners herein, and seized, was alcohol in the possession of these registered pharmacists respectively, and held by them for purposes not only defined by the Federal law, but by the state law governing the practice of pharmacy; unless it may be said that the petitioners were "manufacturers," and in contempt for the sole reason that neither of them had procured a manufacturer's permit, as defined by Section 2164, Code of 1924. The interpretation given this law by the department of justice of Iowa and by the pharmacy commission of Iowa has been, until this proceeding was instituted, that a pharmacist was not required to have a state manufacturer's permit to compound or dispense drugs, medicines, and medicated preparations, and to carry on the ordinary and usual retail business of a pharmacist.

What was the legislative intent in the enactment of the law governing a manufacturer's permit? It would be practically impossible for a pharmacist to practice his profession and conduct his business without the use of alcohol. Must a pharmacist be recognized and classed as a manufacturer because he

compounds drugs, medicines or medicated preparations in which alcohol is used? Does the statute so intend?

Section 2164 reads as follows:

"Patent and proprietary medicines, tinctures, extracts, toilet articles, and perfume, and other like commodities, none of which are susceptible of use as a beverage, but which require as one of their ingredients alcohol or vinous liquors, may be manufactured within this state, provided a permit so to manufacture ·is first obtained as hereinafter provided."

It is obvious that the legislature intended to classify, under this section, all persons, firms, and corporations that engage in the business of manufacturing, as such: that is, a person, firm, or corporation that manufactures for wholesale purposes, or with the intent of selling to retailers for the purpose of resale. No such intent or purpose on the part of either petitioner is disclosed in the instant record. The petitioners, as pharmacists, did not leave the zone of the business of pharmacy and enter that of a manufacturer. They compounded, sold, and dispensed only to their customers, in the ordinary and usual business of retail druggists.

The legislature did not classify the pharmacist as a manufacturer, and the content and context of the act disclose the legislative intent. Section 2136, Code of 1924, authorizes wholesale drug corporations holding a liquor permit to sell alcohol to certain classes of persons, and classifies such persons according to the character of the business or the purpose for which said alcohol is used. This classification includes: (1) registered pharmacists, (2) manufacturers, (3) licensed pharmacist permit holders, (4) manufacturing and industrial establishments in giving first-aid treatment, (5) bona-fide hospitals or sanatoriums, (6) licensed physicians, etc. Section 2136 reads as follows:

"The permit issued to a wholesale drug corporation shall authorize said corporation, under the limitations herein provided, to sell: 1. Alcohol for specified chemical and mechanical purposes to persons, firms, and corporations who have qualified, under Federal and state statutes and regulations, to purchase and use alcohol for such purposes. 2. Alcohol and wine for the purpose of manufacturing patent and proprietary medicines and

toilet articles and compounding medicines, tinctures, extracts, or other like commodities, none of which are susceptible of use as a beverage, to pharmacists who are registered under the laws of this state and who are actively engaged in this state in the retail drug business and in such compounding. 3. Alcohol and wine for the purpose of manufacturing patent and proprietary medicines and toilet articles and compounding medicines, tinctures, extracts, or other like commodities, none of which are susceptible of use as a beverage, to firms or corporations which are actively engaged in this state in the retail drug business and in compounding such medicines, tinctures, extracts, or other like commodities under the immediate supervision of a pharmacist licensed under the laws of this state. 4. Alcohol and wines for the purpose of manufacturing patent and proprietary medicines, tinctures, extracts, toilet articles, and perfume, or other like commodities, which require such liquors as an ingredient thereof, and which are not susceptible of use as a beverage, to persons, firms, and corporations who are holders of permits to so manufacture. 5. Intoxicating liquors to licensed pharmacists holding a permit to sell such liquors on prescription for medical purposes. 6. Intoxicating liquors to manufacturing and industrial establishments for the purpose of furnishing first-aid treatment to injured persons as defined by Federal statutes and regulations. 7. Intoxicating liquors for medical purposes, to bona-fide hospitals or sanatoriums engaged in the treatment of persons suffering from recognized diseases and ailments. 8. Intoxicating liquors for medical purposes to bona-fide hospitals or sanatoriums engaged in the treatment of chronic alcoholism by the tapering-off method. 9. Intoxicating liquors to licensed physicians for the purpose of use by them in accordance with Federal statutes or regulations or in accordance with state statutes, for compounding such preparations as are necessary for use in their professional practice, and for sterilization and laboratory purposes. 10. Alcohol to licensed dentists for the purpose of sterilization, annealing gold, or other like non-beverage purposes. 11. Alcohol to licensed veterinarians for any legitimate non-beverage purpose. 12. Alcohol and other intoxicating liquors to any person, firm, or corporation located and doing business in any foreign state and legally entitled to purchase and receive such liquors under the laws of such foreign state.''

The legislature by this classification clearly differentiates a registered pharmacist from a manufacturer, and indicates that the sale of alcohol may be made to registered pharmacists for the conduct of their business, as defined by law.

Under Section 2136 (Subdivision 3) a wholesale drug corporation holding a permit to purchase and sell intoxicating liquor may sell alcohol to firms and corporations which are actively engaged in this state "in the retail drug business and in compounding such medicines, tinctures, extracts, or other like commodities under the immediate supervision of a pharmacist licensed under the laws of this state." This recognizes the fact that a retail drug business, as defined by law, may be conducted by a person, a firm, or a corporation; but, in the event that a firm or corporation is the owner and operator, a registered pharmacist must have immediate supervision of the business.

Section 2136 (Subdivision 4) also authorizes the sale of alcohol "for the purpose of manufacturing patent and proprietary medicines, tinctures, extracts, toilet articles, and perfume, or other like commodities, which require such liquors as an ingredient thereof, and which are not susceptible of use as a beverage, to persons, firms, and corporations who are holders of permits to so manufacture," as defined by Section 2164.

This latter paragraph does not discriminate as between manufacturers, as such, and registered pharmacists. Subdivision 4 simply purports to take care of persons who are not registered pharmacists, and who are engaged in the manufacturing business. The latter must obtain a manufacturer's permit. To hold otherwise would reduce Subdivision 4 to a nullity.

It must be recognized that the compounding of tinctures, extracts, and medicated preparations is of the very essence of the pharmacy business, and has been throughout the history of the state. The pharmacist is a technical compounder. The statute expressly gives him the right to compound drugs, medicines, and medicated preparations "for internal or external use * * * for the cure, mitigation, or prevention of disease of either man or animals." The word "compound" literally means "to place together." The American Illustrated Medical Dictionary (14th Ed., 1927) defines the word as follows:

"1. Made of two or more parts of ingredients. 2. Any sub-

stance made up of two or more kinds of materials. 3. In chemistry, a substance which consists of two or more chemical elements in union.''

As heretofore pointed out, the legislature of this state recognized the fact that drugs and medicines require alcohol, the function of which is a solvent, preservative, or antiseptic.

We therefore hold that the petitioners were within the law in doing what they did do, as disclosed by the record. The writ heretofore issued by this court is sustained, and the judgment entered by the trial court is —*Reversed.*

EVANS, ALBERT, KINDIG, and WAGNER, JJ., concur.

FAVILLE, J., STEVENS, C. J., and MORLING, J., dissent.

FAVILLE, J. (dissenting). —The facts in this case are without dispute. The petitioners had each violated the liquor laws of the state. They were under injunction not to repeat such violation. Their respective places of business were searched by peace officers on December 22, 1925, just before the holiday season. At petitioner Reppert's store the officers found:

''7 gallons of alcohol in the basement; one gallon in a box with a lid on it, and a garbage can placed on top thereof; 6 gallons on a shelf; one gallon behind a prescription counter; 7 gallons in the back room up next to the roof on the rafters, which said alcohol was seized by said police officers and taken to the police station in Des Moines, Iowa, the same being pure grain, government proof alcohol which was capable of being used as a beverage, and when so used was intoxicating.''

At petitioner Veatch's place they found 9 gallons and 2 ounces of alcohol.

The record showed that, between the 12th day of November, 1924, and the 7th day of October, 1925, Reppert had purchased a total of 188 gallons of alcohol, and between the 13th day of November, 1924, and the 14th day of October, 1925, Veatch had purchased 160 gallons of alcohol. The trial court found that:

'' * * * A large part of said alcohol was used by the said Reppert and Veatch, respectively, in making other products not included in the U. S. P. and N. F. Preparations. The quantity of alcohol used by each of the defendants and the respective

amounts seized by the officers at their respective places of business on December 22, 1925, and especially the quantity found at the defendant Reppert's store, and the different places where the same was found, and all of the surrounding conclusions, lead to the inevitable conclusion that each of the defendants had on hands and had used many times the amount required and used by other Des Moines druggists,—to wit, C. W. Rogg Drug Company, Liggett's, and Denny A. Brann,—and that these defendants could not use any such quantity of alcohol for any legal purpose.''

These findings of fact are abundantly sustained by the record.

There was evidence in the record regarding the amount of alcohol reasonably necessary for legitimate use by retail pharmacists in similar establishments in the city of Des Moines. It would seem as if a mere statement of these undisputed facts would be quite sufficient to sustain the order of the trial court finding petitioners to be in contempt.

The opinion of the majority is so far-reaching in its conclusion and in its discussion of the law that a few observations thereon may be pardonable.

Section 1924, Code of 1927, is as follows:

''No one, by himself, clerk, servant, employee, or agent, shall, for himself or any person else, directly or indirectly, or upon any pretense, or by any device, manufacture, sell, exchange, barter, dispense, give in consideration of the purchase of any property or of any services or in evasion of the statute, or keep for sale, or have possession of any intoxicating liquor, except as provided in this title; or own, keep, or be in any way concerned, engaged, or employed in owning or keeping, any intoxicating liquor with intent to violate any provision of this title, or authorize or permit the same to be done; or manufacture, own, sell, or have possession of any manufactured or compounded article, mixture or substance, not in a liquid form, and containing alcohol which may be converted into a beverage by a process of pressing or straining the alcohol therefrom, or any instrument intended for use and capable of being used in the manufacture of intoxicating liquor; or own or have possession of any material used exclusively in the manufacture of

intoxicating liquor; or use or have possession of any material with intent to use it in the manufacture of intoxicating liquors."

This is the established law. The mere possession of intoxicating liquor is in *every* case prima-facie evidence of maintaining a nuisance or bootlegging. Section 1966-a1, Code of 1927. The statute provides that the possessor of liquor may show in defense that he has a right to the possession of such liquor under the laws of the state of Iowa. Section 1966-a2. The question is, then, simply whether or not the petitioners showed themselves legally entitled to have such a quantity of liquor in their possession, or to have had the amount which it was shown they had possessed during a period of time since the injunctions were granted, and to have used the same legally. The claim of the petitioners is that they are registered pharmacists, and that, being registered pharmacists, conducting retail drug stores, they have a perfect right to buy alcohol in the quantities shown and to use it in the manner proven.

Under the record in this case, it is quite apparent that much, if not all, of the argument of the majority opinion is by the mark. Even if it be conceded (which I do only for the purpose of the argument) that a registered pharmacist, operating a retail drug store, may buy and have in his possession a proper amount of alcohol for legitimate use in compounding medicines and filling prescriptions, still, under the undisputed record in this case, such defense is not available to these petitioners. The quantity purchased, the amount on hand, the places where it was obviously concealed, together with the established fact of its use for other purposes than compounding medicines and filling prescriptions, furnish, in any event, abundant ground for sustaining the trial court in punishing petitioners for contempt. We do not review these cases in certiorari *de novo*, and no error on the part of the trial court is shown, under the record. This alone should end the case.

But because of the far-reaching effect of the opinion of the majority, a few further observations are justifiable. The majority hold that the United States Pharmacopœia and National Formulary are the "official guide to a pharmacist;" and the plain inference, if not the express holding, is that a registered pharmacist may possess and use alcohol in any quantity, so long as he uses it to make some product which is included in

the United States Pharmacopœia and National Formulary. The majority emphasize the point by illustrations of articles described in said books. I deny the proposition on two grounds: (1) If the pharmacist steps outside his legitimate and proper sphere as a compounder of medicines and prescriptions and becomes a manufacturer, he violates the law unless he has a manufacturer's permit; and (2) the United States Pharmacopœia and National Formulary are *not* "official guides" and protection to a registered pharmacist in making and selling in Iowa every product described therein.

(1) Section 2580, Code of 1927, defines a pharmacy as follows:

" 'Pharmacy' shall mean a drug store in which the prescriptions of licensed physicians and surgeons, dentists, or veterinarians are compounded."

Retail pharmacists are defined as being of two classes. Section 2578, Paragraphs 1 and 2:

"Persons who engage in the business of selling, or offering or exposing for sale, drugs and medicines at retail.

"Persons who compound or dispense drugs and medicines or fill the prescriptions of licensed physicians and surgeons, dentists, or veterinarians."

It is perfectly clear that, under these definitions, a pharmacist is not one who is engaged in the business of manufacturing articles of commerce and trade that may contain alcohol as one of their ingredients. The business of the pharmacist is to compound or dispense drugs and medicines and fill prescriptions. The legislature has recognized that there are articles of trade and commerce that contain alcohol, and certain persons described in the statute as "manufacturers" are allowed to purchase alcohol for the purpose of using it in the manufacture of such articles. Such manufacturers are required to obtain a permit and to file bond and to submit sworn reports, and are subject to penalties for violation of the statute. Code of 1927, Chapter 103. Even if it be true that a registered pharmacist is entitled to have alcohol in his possession for the legitimate purposes of his business as a pharmacist in compounding medicines and filling prescriptions, he is not within the law when

he steps outside the proper realm of his functions as a pharmacist, and becomes a manufacturer of articles that contain alcohol as one of their ingredients. When he does the latter, he becomes a manufacturer, within the meaning of the statute, and must obtain a manufacturer's permit, furnish his bond, and be subject to the penalties of that statute. This was the clear purpose and intention of the legislature. The fact, if it be a fact, that a pharmacist has a legal right to have alcohol in his possession for the legitimate purpose of compounding medicines and filling prescriptions as a pharmacist, gives him no right to use alcohol for purposes of manufacture of articles for sale in commerce and trade. In this case, the trial court found that the petitioners had become manufacturers, and were using alcohol in the manufacture of articles for purposes of trade and commerce. The record so shows. They had no right to do this without having a manufacturer's permit, and having done so, they have violated the injunctions against them.

(2) Neither can I agree with the majority that a registered pharmacist has a legal right to have in his possession alcohol which he may use for the making of *any* article which is described within the United States Pharmacopœia and the National Formulary. The argument of the majority is that a registered pharmacist may make and sell any of the many hundreds of products which are described in the books above mentioned. Among the most prominent of the drugs mentioned in said books is grain alcohol itself, which the majority say is "a solvent, preservative, and antiseptic." If the majority are right, then I see no reason why they have not opened the door for every retail pharmacist in the state to purchase alcohol and to dispense it as one of the drugs described in the "official guide." What is to prevent? In the "official guide" also appear directions for the manufacture of the product which is known as Jamaica ginger, and which, among the vulgar, is designated as "Jack." When made according to the "official guide," this contains alcohol as one of its important constituents. Heretofore, we have condemned the sale of this product, although strictly prepared according to the specifications of the United States Pharmacopœia, and sustained convictions for its sale by a druggist. *State v. Higgins*, 192 Iowa 201; *State v. Snyder*, 185 Iowa 728. See, also, *State ex rel. Saley v. Bokmeyer Bros.*, 187 Iowa 1312. The

argument of the majority necessarily leads to the conclusion that the petitioners have a perfect right to have in their possession any quantity of alcohol to be used in the manufacture of this unlawful product, *because* it is described in the United States Pharmacopœia and the National Formulary. Numerous other instances might be cited. Are the foregoing cases now to be overruled? The majority necessarily grant immunity to all registered pharmacists who make and sell these alcoholic products, provided only they are made according to the formula of the "official guide." In this I cannot concur.

Even if it be conceded that a registered pharmacist may legitimately have alcohol in his possession for the purpose of filling prescriptions, or for the purpose of compounding and dispensing medicines, this right, even if existing under the statute, cannot be made a subterfuge for the possession of large quantities of alcohol wholly disproportionate to any such legitimate needs. Alcohol kept for the legitimate purposes of a limited retail trade does not need to be purchased in quantities of 188 gallons in eleven months; nor in the conduct of a legitimate drug business is it essential that it find lodgment in obscure places in basement and attic, behind counter, or beneath the protecting shield of a garbage can. A registered pharmacist is a member of an honorable and necessary profession; but when a registered pharmacist violates the law that governs the legitimate practice of his profession, he subjects himself to the penalties which the law prescribes.

Under this record, the trial court was abundantly justified in finding that the petitioners had alcohol in their possession which, under their own evidence, they intended to use for purposes of manufacture, and which were not within the legitimate scope of the compounding and dispensing of medicines as retail pharmacists.

They violated the injunctions against them, the penalty for contempt was properly imposed, and the writ should be annulled.

STEVENS, C. J., and MORLING, J., join in this dissent.