DEPARTMENT OF TREASURY OF THE STATE OF INDIANA
ET AL. *v.* RIDGELY, EXECUTRIX ET AL.

[No. 26,786. Filed November 16, 1936. Rehearing denied
January 12, 1937.]

*George E. Hershman, Philip Lutz, Jr.,* Attorney-General, *Joseph W. Hutchinson,* Assistant Attorney-General, and *Joseph P. McNamara,* Deputy Attorney-General, for appellants.

*Hodges, Ridgely & Davis,* for appellees.

ROLL, J.—Edgar A. Ridgely filed in the Lake Superior Court, Room 3, his petition for an injunction against appellants, to enjoin them from proceeding farther in their attempt to collect certain taxes which they claimed was due the State of Indiana under what is known as the gross income tax law of this state, and which he contended was unlawful and unauthorized. After the commencement of this action the said Edgar A. Ridgely died and the executrix of his estate and his heirs were substituted as parties plaintiffs below by leave of court and are the appellees here.

The complaint alleged in substance that during all the time here in question, the plaintiff and one Dale E. Belles were partners engaged in the sale of drugs and other commodities at their store located in Gary, Lake County, Indiana, and doing business under the firm name of Ridgely Drug Store, and that plaintiff was the owner of two thirds ($\frac{2}{3}$) interest in said partnership and that Dale E. Belles was the owner of a one-third ($\frac{1}{3}$) interest therein; that as a part of their business they filled prescriptions, prescribed by various physicians, and presented to them by individuals for filling, for which they received a reasonable price. That the gross income by the partnership from their prescription business, for the taxable year of 1933 was $14,-780.00. That he paid on his share of this business to the State of Indiana as gross income tax for 1933 the sum of $24.60, the said tax being computed at the rate of one-fourth of one per cent ($\frac{1}{4}$ of 1%) on two-thirds of the total amount received from filling prescriptions. That after the payment of the sum above named the

Department of Treasury of the State of Indiana, on or about April 9, 1934, served a written notice on plaintiff demanding an additional tax on said gross sales in the sum of $73.91; that within 30 days said notice was mailed to him of such additional assessment. He applied to the Department of Treasury of the State of Indiana for a hearing and correction of the amount of tax so assessed upon him, setting forth in the petition the reasons why such hearing should be granted, the reasons being the same reasons herein set out, and requesting a reduction in the tax assessed in the sum of $73.91. That said petition was properly considered and acted upon and denied and plaintiff was duly notified of the action taken. That said Department of Treasury again demanded payment of the balance of the tax which it claimed was due the State, and which plaintiff claimed was unlawful and unauthorized and which he again refused to pay. That the defendant Lillian M. Holley was the sheriff of Lake County and defendant George W. Sweigart was the clerk of the Lake Circuit Court. That on August 24, 1934, the Department of Treasury of Indiana issued a warrant under its official seal, directed to the defendant Lillian M. Holley, as sheriff of Lake County, Indiana, commanding her to levy upon and sell the real estate and personal property of this plaintiff found within her county for the payment of the aforesaid unlawful tax levy, along with damages amounting to $7.39, and for the penalty as provided by the law for the failure to make payment of the lawful levy of taxes, etc. That the sheriff did within five days after the receipt of the warrant, file a copy thereof with the clerk of the Lake Circuit Court who thereupon entered it in the judgment record, all as provided by statute, the doing of which cast a cloud upon the real estate owned by plaintiff and located in Lake county. That the sheriff is now threatening to and will if not enjoined proceed

to seize and levy, under and by virtue of said unlawful and unauthorized warrant above described upon the personal property and real estate of this plaintiff and make sale of the same. The prayer asked for a temporary restraining order and upon final hearing issue a permanent injunction.

To this petition appellants filed a demurrer on the ground that the petition does not state grounds sufficient to constitute a cause for injunction. The court overruled the demurrer and appellants answered by a general denial.

The facts were stipulated by the parties and they are in substance as alleged in the complaint. The trial court entered judgment in favor of appellee and enjoined appellants from taking any further steps to collect the proposed tax. Appellant's motion for a new trial was overruled and the only errors assigned on appeal are, first, the overruling of the demurrer to the petition, and, second, the overruling of the motion for a new trial. The reasons assigned in the motion for a new trial are: (1) that the decision of the court is not sustained by sufficient evidence; and (2) the decision of the court is contrary to law.

These assignments of error present substantially the same question, and will be considered together.

As we understand the contentions of the parties they may be stated as follows: (1) Appellants insist that a suit to enjoin the collection of the proposed tax is not available to appellees; that the gross income statute provides a complete and adequate remedy at law, and that under such circumstances, injunction will not lie; and (2) it is the contention of appellant that the partnership herein was engaged in the retail business only, while appellees contend that they were engaged in the retail business and also in the business of compounding drugs; that is, that part of their income, to wit, $14,-

780.00 derived from filling prescriptions, was derived from compounding drugs, and therefore was not received from retail business, but from that of compounding of drugs and is therefore subject to a rate of one-fourth of 1 per cent as set out in sub-division (a) of §64-2603, Burns' Ind. St. Ann. 1933 (§15983, Baldwin's 1934), and not classified as gross income derived from a retail business which is taxed at one per cent as claimed by the state.

As to the first question above stated, §64-2612, Burns' Ind. St. Ann. 1933 (§15983, Baldwin's 1934), being §12 of the Gross Income Tax statute of the Acts of 1933, provides for a hearing by the department of treasury upon any assessment made against any aggrieved taxpayer upon a petition filed. After the hearing the department shall make such orders as to them appear just and proper. The statute further provides that any person improperly charged with any tax under this act and required to pay the same, may recover the amount improperly collected, together with interest in a proper action against the department of treasury, and also provides that the circuit court of the county in which the taxpayer resides shall have original jurisdiction of such suits. This section further provides for an appeal by either party to such suit as in other civil actions. This statute nowhere expressly states that the remedy therein provided shall be exclusive. Under such conditions, and under the facts of this case, must a citizen of this state who is improperly and unlawfully assessed under the provisions of this act, pay to the state a tax for which he is not in any way liable, and which he does not owe, or permit his property to be sold to pay such a tax and then seek to recover it back by a suit against the department of treasury under the provisions of section 12 *supra*.

We are of the opinion that under the facts as they

appear in this record appellees are not limited to the remedy provided for in section 12, *supra*. He is not compelled to pay the unlawful and unauthorized tax or permit the state to make sale of his personal property and real estate to pay said tax, but he may seek relief in a court of equity by a suit to enjoin the proper officers from collecting such a tax.

In the case of *The Toledo & Wabash R. R. Co.* v. *City of Lafayette* (1864), 22 Ind. 262, 263, this court said:

> "If the taxes in question were assessed without authority of law, there can be no doubt that an injunction is a proper remedy to restrain the collection of them. *Greencastle Township* v. *Black* (1854), 5 Ind. 557; *The City of Lafayette* v. *Jenner* (1857), 10 Ind. 70."

In *Yocum, Auditor* v. *First National Bank of Brazil* (1895), 144 Ind. 272, 275, 43 N. E. 231, it was said:

> "The remedy by injunction against an illegal and void tax is the proper one as this court has many times decided." See cases there cited.

The court further said (p. 275):

> " 'The owner of real estate may, by injunction, prevent a cloud being cast upon his title.' *Thomas* v. *Simmons,* 103 Ind. 538; *Bishop* v. *Moorman, supra* (49 Am. R. 731) ; *Petry* v. *Ambrosher,* 100 Ind. 510.
> "Where a tax is a lien upon property, equity interferes to remove the cloud. Cooley Tax., pp. 746, 747, also p. 761; *Schulenberg, etc., Lumber Co.* v. *Town of Hayward,* 20 Fed. Rep. 422; *Wells, Fargo & Co.* v. *Town of Dayton,* 11 Nev. 161."

There is no question in this case that the entry of the amount of the tax and damages in the judgment record by the clerk of Lake Circuit Court and the issuance and the placing of a warrant in the hands of the Lake county sheriff by the department of state commanding her to make the levy and sale of the personal and real prop-

erty of appellees, to make the amount of the tax and damages, etc., cast a cloud upon the title of appellees' real estate, and placed appellees in a position where equity would afford relief, if the tax is unlawful and void and there is no basis for such assessment. The relief afforded by the statute is an action at law, and this remedy must be speedy, adequate and complete in order to deprive a court of equity of jurisdiction. We think appellees by their complaint and by the evidence have brought themselves clearly within the rules laid down by this court to entitle them to maintain a suit in equity to enjoin the collection of the tax herein, if said tax is invalid, unlawful and void. The fact that the statute provides a method of obtaining a refund if the taxpayer sees fit to pay the tax does not necessarily make this remedy exclusive, nor does it rob a court of equity of jurisdiction to afford equitable relief by way of injunction.

It was held in the case of *Croop et al.* v. *Walton et al.* (1927), 199 Ind. 262, 265, 157 N. E. 275: "If the omitted property is subject to taxation and the amount ■ assessed is erroneous, the taxpayer has the 'right to appeal' under the statute quoted, and he has the right to file a claim for a refund . . ., but where the property is not subject to taxation the assessment is void and its collection can be restrained by injunction, regardless of the right to appeal or to file claim for refund." So we conclude the remedy afforded a taxpayer who has paid tax for which he is not liable either voluntarily or involuntarily, to recover the unauthorized tax is additional and cumulative and not exclusive.

The second question requires an examination and interpretation of section 3 (a) and (c), ch. 50, Acts 1933, p. 388, §64-2603, Burns' Ind. St. Ann. 1933 ■ (§15983, Baldwin's 1934) and apply them to the facts in this case.

Sec. 3a, *supra,* provides in part, "The tax hereby provided for shall be imposed at the following rate."

(a) "Upon the entire gross income of every person engaged in the business of manufacturing, compounding, or preparing for sale, profit or use any article or articles, . . . one-fourth of one per cent."

Sub-section (c) provides:

(c) "Upon the entire gross income of every person engaged in the business of retailing of any tangible commodity or commodities not specifically mentioned in subsection (d) of this act, one per cent."

The facts stipulated show that the Ridgely Drug Store had a gross income from retail sales of $67,355.00 and a gross income from filling prescriptions of $14,-780.00. That a return was made to the department of treasury of the above amounts and that Mr. Ridgely, who owned two-thirds interest in the business, had a gross income of two-thirds of the above amounts; namely, from retail sales $44,903.33 and from filling prescriptions $9,855.33. That on the $44,903.33 income from retail sales he paid gross income tax at the rate of one per cent, and on the $9,855.33 he paid gross income at the rate of one-fourth of one per cent. Appellants contend that filling prescriptions is retail business and the income therefrom should be at the rate of one per cent under subsection (c) of the above statute. While appellees contend that filling prescriptions is compounding and is governed by subsection (a) as above set out.

That filling prescriptions might be in many instances a compounding of drugs by the pharmacist himself there can be no doubt, but on the other hand the prescription may be filled by the druggist without a compounding by him at all. The druggist might, and in many instances does, purchase the compound from some company whose business is that of manufacture and compounding of

drugs, in which instance, all the druggist would do in filling such a prescription would be to sell from the supply he has on hand at retail, and charge a prescription price therefor. But granting that in this case the prescription business, in each instance, involved the act of compounding, is that fact decisive of the question here presented, in favor of appellees? We do not think so. Appellees in their brief set out the definition of the word "compound" as defined by Webster's New International Dictionary as follows. (And we accept this definition for the purpose of this discussion.)

"(1)  To put together, as elements, ingredients or parts, to form a whole, to combine, to unite.
(2)  To form or make up as a composite product, by combining different elements, ingredients, or parts; as, to combine a medicine."

If we should accept appellees' application, that all income derived from the sale of merchandise, that involve the element of "compounding," then it would follow that the greater part of the soda fountain business would come under this classification, for the serving of ice cream sodas, sundies of different varieties and many other combinations that involve the putting together of different ingredients or parts to form a whole. Likewise bakeries who make bread, pies, cakes, and etc., to sell at retail would come within this group. Also groceries, who mix and prepare the coffee, tea, spices, vinegar, extracts and a countless number of articles for sale at retail would come within this classification. All of these involve the act of putting together, mixing different ingredients to form a whole, but yet this fact does not take away from such business the principal characteristic or attribute of retail sale. The fact remains that the article when compounded is sold to the individual for final consumption at a price to cover the

cost of the different elements, plus the expense of preparing the article for sale.

We think section three and the subsections thereof, classifying income derived from different business, should receive a practical and workable construction. Subsection (a) says:

"Upon the entire gross income of every person engaged in the business of manufacturing, compounding, or preparing for sale, profit or use, any article or articles, etc."

The business of compounding is used immediately after the word manufacturing, and in the same section with that of mining, the production of oil, natural gas, and the felling of timber, which gives us some light as to the meaning and construction the legislature intended to give it. Does it seem reasonable to say that the legislature intended to tax the gross income derived from the sale of any article that involved the act of compounding, at the rate of one-fourth of one per cent, without considering the character of his business or any other fact or circumstance connected therewith. That would be unreasonable. The partnership mentioned herein was engaged in the retail business. Selling its drugs and other articles at retail, and this is true with its prescription business. The prescription was filled, it is true many times no doubt, by compounding certain drugs, but the article when so prepared was nevertheless sold over the counter to the individual for final consumption.

In the case of *McArthur* v. *Georgia* (1882), 69 Ga. 444, 446, that court said:

"Bouvier defines the meaning of the word *retail* to be, to *sell* in small parcels and not in gross. And it is so defined by Worcester, Webster, and others who have given their time and study to the meaning of words. Under our law, words are to be given their usual and ordinary signification; to retail, then, is to *sell* in small quantities or parcels. . . ."

In *Campbell* v. *City* (1887), 40 Kan. 652, 654, 20 Pac. 493, the court said:

"A retailer is defined to be 'one who sells goods by small quantities, or parcels'."

In *Markle* v. *Akron* (1846), 14 Ohio 586, 591, the court said:

"But to retail, is to dispose of, in small quantities, . . . It may be a distribution of a whole into parcels."

Cyc., vol. 34, p. 1685, defines retailer as:

"One who sells goods by small quantities or parcels, one who deals in merchandise in smaller quantities than he buys, generally with a view to profit."

In *State* v. *Lowenhaught* (1883), 79 Tenn. 13, 15, the court said:

"We take it, what is meant by retailing is selling by small quantities, to suit customers, articles which are bought in larger amounts generally. Now one who sells in this way, or whose business is so to sell is a retail dealer, one who sells by the nature of his business in gross, and not by the small quantity or parcel to consumers, is a wholesale dealer.

"While these definitions may not include all the elements in detail of either character of dealer, they go far enough for the decision of this case."

In *State* v. *Hawkins* (1884), 91 N. C. 626, 627, the court said:

"To *retail* means, generally, to sell by small quantities, in broken parts, in small lots or parcels, not in bulk. There is nothing in the statute that goes to show this term is used in any restricted or limited sense, or that it does not imply any retailing, either rightful or wrongful."

It seems that the entire business of the Ridgely Drug Store would come within the above definitions of retail business.

Judgment reversed with instructions to the trial court to sustain appellant's demurrer to the petition and for further proceedings not inconsistent with this opinion.