43 So.2d 824

**STATE v. WERTHEIMER BAG CO. et al.**

6 Div. 841.

Supreme Court of Alabama.

Oct. 13, 1949.

Rehearing Denied Dec. 1, 1949.

Further Rehearing Denied Feb. 2, 1950.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn, Jr., Asst. Atty. Gen., for appellant.

126

D. H. Markstein, Jr., Birmingham (cross-appellants), for appellees.

SIMPSON, Justice.

This case involves an appeal from a decree of the circuit court in equity partially overruling an assessment made by the State Department of Revenue against the appellee for sales taxes alleged to be due on the sale of burlap bags to vendors and marketers of the several products hereafter to be noticed.

There are seven classifications of the products for which the bags were used. The trial court affirmed the assessment on classes 1 and 7-A and overturned the assessment on classes 2-6, inclusive, and 7-B. The State has brought the appeal, claiming error in the ruling as to classes 2-6, inclusive, and 7-B and the appellee has cross-appealed, claiming error in the decision as regards class 1, but does not cross-assign error as to 7-A. We will first dispose of classes 2-6 involved in the direct appeal, because we are in agreement with the decision of the trial court as to these, laying aside for the moment classifications 1 and 7-B, to be considered later.

The bags under class 2 were sold by appellee to owners and operators of peanut hullers, which separate the kernel from the hull, and the hulled peanuts are then bagged and sold by the hullers to confectioners, peanut butter plants, peanut oil mills, peanut roasters, etc. The peanuts are purchased by the huller operators from the farmers. Class 3 represents the bags which are sold to the hullers and used in sacking the hulls, which are sold to fertilizer manufacturers, and the vines, which are sold to feed mills, dairymen or farmers for use as cattle feed. Class 4 represents bags which are sold by appellee to owners and operators of wholesale grain and feed companies, which use the bags for sacking corn and oats for shipment to retailers or wholesalers. Class 5 represents transactions where the bags are sold by the appellee to dealers in cotton planting seeds, which are purchased from ginners, and are used for sacking these cotton seed for shipment. Class 6 has two subclassifications, (A) bags sold to wholesale grocery companies, which use the bags in sacking potatoes, cabbages, beans, and other agricultural, grove or garden products for resale to retail merchants, and (B) the bags purchased by certain wholesale produce companies for sacking potatoes purchased from farmers, which product, after being sacked, is sold to retail dealers.

As stated, we have concluded with the trial court that the character of sales represented by the foregoing five classifications (2-6) are non-taxable. On a care-

ful consideration, this court has become convinced that the said sales were exempt under subsection (i), § 755, of the Sales Tax Statute, Code 1940, Title 51, which, as pertinent, reads: "§ 755. Exemptions.— There are however exempted from the provisions of this article and from the computation of the amount of the tax levied, assessed or payable under this article the following: * * * (i) The gross proceeds of the sale, or sales, of * * * bags * * * used in preparing agricultural products, dairy products, grove or garden products for market * * * when such * * * bags * * * are to be sold or furnished by the seller of the products contained therein to the purchaser of such products."

It is the contention of the State that this subsection grants an exemption to the farmer only and that he alone is the person who prepares these products "for market." In this we cannot agree. The statute is not so worded.

█ The opinion below prevailed that the various hullers and wholesalers who purchased the bags and sacked the products were engaged in preparing them for market and ruled the sales of the bags as tax exempt. We think this a proper interpretation.

█ It is true, as argued by the able assistant Attorney General, that exemption provisions in a taxing statute are to be strictly construed in favor of the taxing power. State v. Tuscaloosa Cotton Seed Oil Company, 208 Ala. 610, 95 So. 52.

█ But, the court will indulge no strained construction to give effect to this rule where a fair interpretation of the legislative intent may lead to a contrary conclusion. Arbitrary rules of construction are of little value when the real intention can be gathered from the act itself. Holt v. Long, 234 Ala. 369, 174 So. 759.

Subdivision (f) of § 755 does, as pointed out to sustain the contrary view, show that the exemption provision as regards the "gross proceeds of poultry and other products of the farm * * * when such sale or sales are made by the producer or mem-

bers of his immediate family * * *" is designed to benefit the farmer alone. And such was the holding in Curry v. Reeves, 240 Ala. 14, 195 So. 428. Subsection (f) was similarly construed, as regards the provision exempting the gross proceeds of livestock, until it was amended to include livestock "by whomsoever sold." Bowman v. State Tax Commission, 235 Ala. 190, 178 So. 216.

█ But subdivision (i) does not so provide, nor does it indicate any such intent. It makes no suggestion that the preparation for market be done on the farm or by the farmer and we think if the bags are used—as described—by the producer, the huller, or the wholesaler in bagging and making ready these products to be placed in the channels for distribution for consumption, the bags are used in preparing the products for market within the meaning of the exemption provision considered.

The rationale in the opinion by Judge Sibley in Fleming v. Farmers Peanut Co., 5 Cir., 128 F.2d 404, is somewhat persuasive to the result here attained, where a construction was given a provision of the wage and hour law exempting wages of persons employed in "preparing * * * agricultural commodities for market." The act empowered the administrator to define the "area of production" but it was noticed that the statute made no point as to whether the preparation for market occurred on the farm or elsewhere in the "area of production." It was first observed in that opinion, as is the case here, that "an indefinite definition may well be given a broad application." Then passing to the precise question under decision, the court stated: "We pass then to enquire whether the work of shelling and cleaning peanuts is 'preparing them in their raw or natural state for market.' Without doubt peanuts are an agricultural commodity, whether shelled or unshelled. * * * The small Spanish peanuts raised in Georgia, Florida and Alabama are marketed shelled, to make candy, peanut butter and salted peanuts. Some are ground and pressed for oil. Preparing them for market may well include shelling, since they are not marketable in

the shells or pods. * * * The statute makes *no point about the preparation being done on the farm or by the farmer, but only that it occur in the area of production.* * * *" 128 F.2d 407.

We are also impressed with the argument of appellee that the legislative history of § 755, with amendments, also tends to indicate the intention not to limit subsection (i) to farmers alone. Subsection (f), after decision in the Bowman case to the effect that the exemption as regards the sale of livestock was for the farmer alone, was amended to include livestock "by whomsoever sold", and subsection (h), after decision in the Curry v. Reeves case, was amended with reference to the sale of baby chicks. Throughout these successive changes (i) has remained unchanged, and we think that had the legislature intended to restrict the exemption there provided to sales made to farmers—which in language it does not do—it would have amended that subsection so to indicate, while others were being amended in order to make the restriction reasonably clear to that end.

■ In reaching this conclusion, we are not unmindful of the argument that the administrative construction accorded the subsection in the past as being restricted *to farmers, is entitled to favorable consideration by the court,* Cole v. Gullatt, 241 Ala. 669, 4 So.2d 412; Jones v. Johnson, 240 Ala. 357, 199 So. 539; State v. Tuscaloosa Building & Loan Association, 230 Ala. 476, 161 So. 530, 99 A.L.R. 1019. Yet this rule of construction is to be laid aside where it seems reasonably certain that the administrator's interpretation has been erroneous and that a different construction is required by the language of the act. United States v. Jackson, 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361; Interstate Commerce Commission v. Love, D.C., 77 F.Supp. 63.

So considered, the judgment overturning the assessment of taxes under classes 2, 3, 4, 5, and 6 is due to be affirmed.

It remains next to consider classification 7-B, which the court also ruled exempt from sales tax.

The sales of the bags in this classification were made by appellee to the Alabama Marble Company. Following is the status, as indicated by the agreed statement of facts: The Alabama Marble Company is engaged in the business of quarrying marble. In the process of quarrying and dressing the marble there are obtained small chipped pieces of marble varying in size, of irregular shapes, from a fraction of an inch to several inches. These chipped pieces are ground in a mill to a size varying from a fine dust to particles a fraction of an inch. The ground marble is sacked in the burlap bags and sold by the Alabama Marble Company to contractors for use mainly in constructing terrazzo floors. The title to the burlap bags passes from the Alabama Marble Company to the purchaser of the ground marble, and is furnished to the purchaser when the marble is sold, without a separate breakdown or listing as to price of the burlap bags.

Claim of exemption by appellee under this class was made under § 752(i), Title 51, Code 1940, as amended (exempting wholesale sales), which, as pertinent, reads: "The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale, and the furnished container and label thereof."

■ It is contended that the Alabama Marble Company is a manufacturer or compounder of a product within the meaning of said exemption. We think it clear that the marble company, in executing the process of grinding the marble to the desired size for sale to contractors, is neither a manufacturer nor a compounder.

The law is rather clear that the operation of quarrying and crushing marble is not manufacturing. The following cases are decisive to this conclusion: People ex rel. Tompkins Cove Stone Co. v. Saxe, 176 App.Div. 1, 162 N.Y.S. 408, affirmed, People ex rel. Tomkins Cove Stone Co. v.

Saxe, 221 N.Y. 601, 117 N.E. 1081; Commonwealth v. John T. Dyer Quarry Co., 250 Pa. 589, 95 A. 797; Commonwealth v. Welsh Mt. Mining & Kaolin Mfg. Co., 265 Pa. 380, 108 A. 722; Wellington v. Belmont, 164 Mass. 142, 41 N.E. 62; Inhabitants of Leeds v. Maine Crushed Rock & Gravel Co., 127 Me. 51, 141 A. 73(5); see also 10 A.L.R. 1307, § 28.

We think it equally clear that the marble company was not a compounder within the meaning of the foregoing provision. Counsel for appellee asserts that there is no legal distinction between "processor" and "compounder" and cites certain cases, but we are not impressed that these citations are at all sustentive of such a position.

In the first place, though this exemption is not written into § 755 as such, it is an exception to the sales tax provision and must be strictly construed against the taxpayer. State v. Levey, 248 Ala. 656, 29 So.2d 129.

Next, we regard it as plain that the marble company is not a compounder since that term denotes one who mixes various ingredients to secure a finished product. The marble company mixes nothing, but merely quarries and crushes the stone. Webster's New International Dictionary, 2d Edition, defines the verb "compound" as follows:

"1. To put together, as elements, ingredients, or parts, to form a whole; to combine; unite.

\* \* \* \* \* \*

"2. To form or make up, as a composite product by combining different elements, ingredients, or parts; as to *compound* a medicine."

We think this sufficiently indicates that the marble company was not a "compounder" of the ground marble. The following cases treating of the term "manufacturer or compounder" are also persuasive to the conclusion: Indiana Creosoting Co. v. McNutt, 210 Ind. 656, 5 N.E.2d 310; Department of Treasury of Indiana v. Ridgely, 211 Ind. 9, 4 N.E.2d 557, 108 A.L.R. 1067; J. Ellwood Lee Co. v. McClain, C.C., 106 F. 164; U.S. v. Stone & Downer Co., 1 Cir., 175 F. 33; Reppert v. Utterback, 206 Iowa 314, 217 N.W. 545.; Rutan v. Johnson & Johnson, 3 Cir., 231 F. 369, 375; U.S. v. Stubbs, D.C., 91 F. 608, 610.

We hold, therefore, that the trial court was in error in overruling the assessment on the sales of bags to the Alabama Marble Company.

The final question deals with the cross-appeal and relates to class 1. As to this class, the agreed statement of facts shows:

"Class One

"The tangible personal property, the sales of which form the basis of the assessment, in this class, consists of rolls of burlap of various widths made of jute, hemp, or cotton, and second-hand burlap bags. The purchasers are the owners and operators of nurseries which grow and sell shrubs, cuttings, flowers, flowering plants, bulbs, seedlings, and similar horticultural articles, which are grown in green houses and in the open. The burlap or second-hand bags are used by the nursery owner to hold together a quantity of soil placed around the roots of the stock for shipment. The burlap and bags, when so used around the roots, are sewed together with a heavy thread. Before the second-hand bags are so used by the nursery owner, they are split open in order to receive the soil and roots, and are then sewed together as above described. Before the rolls of burlap are used, the nursery owner cuts pieces of burlap of appropriate size from the roll. Upon sale of the nursery stock to a purchaser, the title passes to the purchaser, without any breakdown as to separate prices of the nursery stock and the burlap. Such sales are shown as Schedule A of the bill."

The contention was advanced by the taxpayer in the hearing before the trial court and is renewed here that sales under this classification were exempt under subdivision (i), § 755, supra, which exempts from the tax the gross proceeds of sales of " \* \* \* bags, bagging, \* \* \* or other containers \* \* \* used in preparing agricultural \* \* \*, dairy

* * *, grove or garden products for market * * *."

The trial court ruled adversely to this theory. On first impression, we thought that a correct view, but on more mature consideration, we have become impressed that such a view fails to give the proper interpretation to the term "agricultural products."

Webster's New International Dictionary, 2d Edition, Unabridged, defines agriculture as follows: "agriculture, n. The art or science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding, and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc."

Thus it is to be observed that the term includes the production of plants useful to man, by tilling the soil, etc., and "includes * * * horticulture." Webster defines horticulture as: "The cultivation of a garden or orchard; the science and art of growing fruits, vegetables, and flowers or ornamental plants. Horticulture is one of the main divisions of agriculture." Horticulture, of course, comprehends the growing of nursery plants.

█ The conclusion thus appears to be sound that if the accepted definition of the term "agriculture" is to be considered as that intended by the act, the articles described in classification 1 were used in preparing agricultural products for market and were exempt from taxation. The act gives no definition of the term and we have concluded that there would be no sound basis for discarding the generally accepted definition for another without any governing standard. Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835(20); Ex parte Pepper, 185 Ala. 284, 64 So. 112; 59 C.J. 974.

The authorities generally seem to sustain such a position. 2 American Jurisprudence 395, § 2, carries the text that: "Agriculture, in the broad and commonly accepted sense, may be defined as the science or art of cultivating the soil and its fruits, especially in large areas or fields, and the rearing, feeding, and management of livestock thereon, including every process and step necessary and incident to the completion of products therefrom for consumption or market and the incidental turning of them to account. The term is broader in meaning than 'farming;' and while it includes the preparation of soil, the planting of seeds, the raising and harvesting of crops, and all their incidents, it also includes gardening, horticulture, viticulture, dairying, poultry and bee raising, and more recently, 'ranching.' * * *"

No case has been brought to our attention which is exactly on all-fours with the one here considered, but there are many cases in other jurisdictions interpreting the term "agriculture" within the meaning of the Workman's Compensation, Fair Labor Standards, and other statutes, which are strongly persuasive to the same result. Such cases are: Hill v. Georgia Casualty Co., Tex.Com.App., 45 S.W.2d 566; Guerrero v. U.S. Fidelity & Guaranty Co., 128 Tex. 407, 98 S.W.2d 796; Ginn v. Forrest Nursery Co., 165 Tenn. 9, 52 S.W.2d 141; Dye v. McIntyre Floral Co., 176 Tenn. 527, 144 S.W.2d 752; Jordan v. Stark Brothers Nurseries & Orchards Co., Inc., D.C., 45 F.Supp. 769; Bucher v. American Fruit Growers' Co., 107 Pa. Super. 399, 163 A. 33; Florida Industrial Commission v. Growers Equipment Co., 152 Fla. 595, 12 So.2d 889; Walling, Adm'r v. Rocklin, D.C., 44 F.Supp. 355.

Typical of the uniform holdings of the above cases that agriculture includes horticulture, which would include the growing of nursery stock, is the above Tennessee case of Ginn v. Forest Nursery Co., where in quoting from Ruling Case Law, the following definition was approved: "'* * * The expression "agriculture" includes horticulture, forestry, and the use of land for any purpose of husbandry, inclusive of the keeping or breeding of live stock, poultry, or bees, and the growth of

fruit and vegetables. * * *'" 52 S.W. 2d 142.

And the conclusion was reached that: "The employment [with a nursery] of the plaintiff in error in the case before us required him to till the soil, to tend growing plants, shrubs, and young trees, to prepare them for market, and to deliver them to a shipping point. The harvesting and marketing of grain, the transplanting and care of tobacco plants, and the delivery of a bale of cotton from farm to shipping point, are all ordinary incidents of farm labor. The work and labor performed by plaintiff in error differed from that of the ordinary farmer only in the kind and nature of the products of the soil grown and prepared for market. No difference in hours of labor, hazard, or remuneration is pointed out which might induce a Legislature to include the one and exclude the other from the operation of the statute. The labor performed by plaintiff in error and contemplated by his employment was agricultural in the literal sense and meaning of the word, and we think we would not be justified in holding that he was not a 'farm or agricultural laborer.'" 52 S.W. 2d 142.

While there may be some cases which might tend to support the contention advanced by the State, we think the foregoing is the better result to be attained and, therefore, are at the conclusion that as to classification 1, the judgment of the court must be ordered reversed and one here rendered exempting the items therein from the tax.

We are at the conclusion that the judgment of the lower court is due to be affirmed on all issues except classification 7-B, which we hold to be subject to taxation, and classification 1, which we hold exempt from taxation, and to this extent the judgment is reversed and rendered; otherwise it is affirmed.

Opinion modified on rehearing and judgment affirmed in part and in part reversed and rendered.

BROWN, FOSTER, LIVINGSTON, and LAWSON, JJ., concur.